# Joseph Monteith v. Jefferson Insurance Company of New York and Peerless Insurance Company

[618 A.2d 488]

No. 91-244

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Peck, J. (Ret.),** Specially Assigned

Opinion Filed October 23, 1992

Motion for Reargument Denied November 18, 1992

Motion for Reconsideration Denied December 4, 1992

*Richard H. Saudek* of *Cheney, Brock & Saudek, P.C.,* Montpelier, for Plaintiff-Appellant.

*Samuel Hoar, Jr.* and *Frederick S. Lane III* of *Dinse, Erdmann & Clapp,* Burlington, for Defendant-Appellee Jefferson Insurance Company of New York.

*David L. Cleary* and *Ellen J. Abbott* of *David L. Cleary Associates,* Rutland, for Defendant-Appellee Peerless Insurance Company.

**Johnson, J.** Plaintiff was injured when he was struck by an automobile while riding his motorcycle. He suffered total personal injury damages exceeding $200,000, and recovered only $100,000 from the insurer for the driver of the other vehicle, whose negligence caused the accident. He appeals from a trial court decision holding that two insurers with whom he had policies are not liable for his additional damages under policy provisions covering accidents with underinsured motorists. We reverse.

At the time of the accident, plaintiff had a policy with defendant Jefferson Insurance Company of New York covering his motorcycle and providing $100,000 in uninsured motorist/underinsured motorist (UM/UIM) coverage. Plaintiff also had a policy with defendant Peerless Insurance Company covering plaintiff's automobiles and providing $300,000 of UM/UIM coverage.

Plaintiff brought a declaratory judgment action, claiming that both Jefferson and Peerless were obligated under their respective policies to pay him the difference between the damages he suffered and the amount he recovered from the underinsured tortfeasor, up to the maximum amount of $400,000 available to him under the two policies.

Defendant Peerless moved for summary judgment on the grounds that plaintiff's policy contained an explicit provision excluding from coverage any injuries sustained while "occupying . . . any motor vehicle owned by you . . . which is not insured for coverage under this policy." Defendant Jefferson moved for summary judgment on the grounds that plaintiff was covered for only $100,000 under his policy with Jefferson, an amount already recovered by plaintiff from the tortfeasor, thus discharging Jefferson's duty to plaintiff. Jefferson further argued that its policy could not be "stacked" with the Peerless policy to create a total available coverage amount of $400,000, because the exclusion provision of the Peerless policy barred any recovery against Peerless.

In opposing defendants' joint motion for summary judgment, plaintiff argued that the tortfeasor was underinsured under 23 V.S.A. § 941(f), thus allowing a claim against Peerless, whose $300,000 UIM limit was clearly in excess of the $100,000 maximum recovery limit of the tortfeasor's insurer, as well as

against Jefferson, since the total underinsurance coverage available under the two policies, pursuant to § 941(f), was $400,000. Plaintiff claimed that he should be permitted to "stack" the UIM coverage of the two policies at issue.

The trial court granted Peerless's summary judgment motion, holding that the exclusion provision contained in its policy barred recovery for injuries suffered by plaintiff because his motorcycle was a motor vehicle owned by plaintiff and not covered under the Peerless policy. The court also granted Jefferson's summary judgment motion, holding that its UIM coverage limit of $100,000 matched the $100,000 recovery limit of the tortfeasor's insurance, thus eliminating any claim of underinsurance. The present appeal followed.

## I.

 The focus of dispute with regard to the Peerless policy is a clause providing in pertinent part:

> We do not provide Uninsured Motorists Coverage[1] for,. . . bodily injury sustained by any person:
>
> 1. While occupying . . . any motor vehicle owned by you . . . which is not insured for this coverage under this policy.

Plaintiff does not dispute that this clause excludes coverage, but argues that it violates Vermont law. We agree. 23 V.S.A. § 941(a)(emphasis supplied) provides, in pertinent part, that:

> No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein, or supplemental thereto, *for the protection of persons insured thereunder who are legally entitled to recover damages*, from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, and for property damages resulting from the owner-

---

[1] "Uninsured motor vehicle" is defined in the policy as "a land motor vehicle . . . of any type:
 2. To which a liability bond or policy applies at the time of the accident but its limit of liability is less than the limit of liability for this coverage."

ship, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

Referring to § 941(a), we stated in *Sanders v. St. Paul Mercury Insurance Co.*, 148 Vt. 496, 498–99, 536 A.2d 914, 915–16 (1987) (citations omitted) (emphasis supplied):

> This statute protects insured motorists from uninsured, financially irresponsible drivers. Recovery is not limited to situations involving the motor vehicle of the insured. Though no cases have reached this Court on the question, *the language of § 941 extends coverage to insured persons wherever they may be, provided that they are injured by an uninsured motorist,* and that is the interpretation of similar statutes elsewhere. No policy can be issued which reduces the amount of coverage mandated by statute.

The essence of UM/UIM coverage under § 941 is its portability. The statute does not allow insurers to condition coverage on the location of the insured nor the insured's status as a motorist, a passenger in a private or public vehicle, or as a pedestrian. In the language of § 941(a), UM coverage is designed "for the protection of *persons*," not vehicles. This reading is consistent with the basic philosophy of the statute, which is to put the insured in the same position as if the negligent driver had been as responsible as the insured in obtaining liability insurance. As we said in *Muir v. Hartford Accident & Indemnity Co.*, 147 Vt. 590, 593, 522 A.2d 236, 238 (1987), "UM coverage protects those insured 'against the unfortunate hazard presented by an injury inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene.'" (quoting *Rhault v. Tsagarakos*, 361 F. Supp. 202, 205 (D. Vt. 1973)).

Had plaintiff in this case been a pedestrian, and had the driver causing the accident been uninsured, there would be no question that plaintiff could have obtained $300,000 in UM recovery from Peerless, assuming damages in that amount. Similarly, if plaintiff had been a passenger in an uninsured vehicle in collision with a negligent driver who was also uninsured, there would be no question about a UM recovery from Peerless, up to $300,000. It follows that Peerless cannot deny UM coverage where an accident occurs while the insured is driving a vehicle owned by the insured but not insured by Peerless. Al-

lowing that kind of exclusion would defeat the broad, remedial purpose of UM coverage just as surely as if the company attempted to deny coverage if the insured were walking down the street or riding in a bus when an accident occurred. To the extent a motorist is *under*insured, the same principle applies.

Courts in other jurisdictions are divided on the validity of an exclusion to coverage where a named insured operates a vehicle owned but not insured under the policy, but many courts have held that such clauses violate state uninsured motorists statutes and are therefore invalid. See, e.g., *Mullis v. State Farm Mutual Auto. Ins. Co.*, 252 So. 2d 229, 237–38 (Fla. 1971); *Barnett v. Crosby*, 5 Kan. App. 2d 98, 99–100, 612 P.2d 1250, 1252 (1980); *Earl v. Commercial Union Ins. Co.*, 391 So. 2d 934, 938–39 (La. Ct. App. 1980); *Nygaard v. State Farm Mutual Auto. Ins. Co.*, 301 Minn. 10, 18–19, 221 N.W.2d 151, 157 (1974); *Jacobson v. Implement Dealers Mutual Ins. Co.*, 196 Mont. 542, 545–47, 640 P.2d 908, 910–12 (1982); *Beek v. Ohio Casualty Ins. Co.*, 135 N.J. Super. 1, 5–6, 342 A.2d 547, 549 (App. Div. 1975), *aff'd*, 73 N.J. 185, 373 A.2d 654 (1977), *cited with approval in Sanders*, 148 Vt. at 503, 536 A.2d at 918. But see *Corso v. State Farm Mutual Auto. Ins. Co.*, 668 F. Supp. 364, 372–73 (D. Del. 1987), *aff'd*, 838 F.2d 1205 (3d Cir. 1988); *Brackett v. Middlesex Ins. Co.*, 486 A.2d 1188, 1190–91 (Me. 1985).

■ Peerless argues that the language of 23 V.S.A. § 800(a), that "[n]o owner or operator of a motor vehicle . . . shall operate . . . *the* vehicle" without required insurance, requires each vehicle owned by an insured to have its own insurance. This, in turn, limits UM/UIM coverage to each vehicle's individual policy. To hold otherwise, Peerless argues, could result in coverage of an uninsured vehicle, contrary to the basic intent of the Financial Responsibility and Insurance statute (23 V.S.A. ch. 11).

We disagree. The point is not that Peerless is made to cover an uninsured vehicle under plaintiff's theory, but rather that it is barred from writing exceptions to a clear statutory requirement that it cover its insureds wherever they become victims of an uninsured or underinsured motorist. The same proposition was well stated by the court in *Nygaard*: "If our interpretation of the intent of the uninsured-motorist statute is correct, little room is left for an insurer unilaterally to narrow the geographic

scope of the statutorily required coverage." 301 Minn. at 19, 221 N.W.2d at 157.

Peerless mistakenly relies on *Sanders* to support its argument. In *Sanders* we held that the insurer could write and enforce an *intra*policy stacking provision, but we did not extend our rationale to *inter*policy stacking provisions. 148 Vt. at 503, 536 A.2d at 918. We thus distinguished between an insurer's power to define the scope of UM coverage within a single policy that *did* cover multiple vehicles under separate endorsements, and the absence of an insurer's power to delimit or affect UM coverage in policies written by other insurers. Here, plaintiff's motorcycle was not insured by Peerless, and plaintiff's claim is based, not on Peerless's policy covering his automobiles (which purported to exclude UM/UIM coverage for owned-but-not-insured vehicles), but rather on the inadequacy of another insurance policy, that of the negligent driver.

In sum, the clause in the Peerless policy denying UM coverage for accidents occurring while the insured is occupying a vehicle owned by him but not insured by the company is inconsistent with Vermont law and is unenforceable.

## II.

■ We next consider whether plaintiff should be allowed to "stack"[2] the UM coverage of the Peerless policy ($300,000) and the UM coverage of the Jefferson policy ($100,000) to determine whether the tortfeasor was underinsured. Plaintiff argues that § 941(f) mandates consideration of all UM coverage "applicable," i.e., all policies providing the insured with UM coverage, in determining initially whether a motorist is underinsured. The legislature has mandated that insurers provide UM/UIM coverage as part of every policy of insurance issued in this state. Section 941(f) defines *under*insurance as follows:

(f) For the purpose of this subchapter, a motor vehicle is underinsured to the extent that its personal injury limits of

---

[2] "Stacking" refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy would be inadequate. See *Goodrich v. Lumbermens Mutual Casualty Co.*, 423 F. Supp. 838, 842 (D. Vt. 1976); *Blakeslee v. Farm Bureau Mutual Ins. Co.*, 388 Mich. 464, 473, 201 N.W.2d 786, 790 (1972).

liability at the time of an accident are less than the limits of uninsured motorists coverage *applicable to any injured party* legally entitled to recover damages under said uninsured motorist coverage.

(Emphasis added.) In view of our holding in section I that the UM/UIM coverage is portable and attaches to the insured rather than to the vehicle, both the Peerless and the Jefferson policies apply to plaintiff's injuries, and the total UIM coverage is therefore $400,000.

Jefferson argues, however, that the limits of its policy should be considered in isolation, apart from any other insurance available. The clause of the policy on which Jefferson relies (its so-called "antistacking" provision) provides as follows:

"Uninsured motor vehicle" means a land motor vehicle of any type:

. . . .

2. To which a liability bond or policy applies at the time of the accident. In this case its limit of liability must be less than the limit of liability for this coverage.

Since Jefferson's UM coverage of $100,000 was equal to the liability limits of the tortfeasor, Jefferson argues that it owes nothing. Moreover, Jefferson argues that its antistacking provision is not the kind of "excess-escape" clause that was found to violate § 941 in *Goodrich v. Lumbermens Mutual Casualty Co.*, 432 F. Supp. at 843, because it does not seek to reduce statutorily mandated benefits, but rather defines "uninsured motor vehicle" in an acceptable manner.

The interpretation of the clause Jefferson urges us to adopt, however, *would* reduce the benefits required under law, whatever its original purpose. By limiting the situations in which its underinsured motorist's coverage will apply, Jefferson has effectively removed its policy as one "applicable" to the insured, despite the clear language of § 941(f) defining UIM as including *all* applicable UM coverage. Giving effect to Jefferson's antistacking clause violates the plain language of the statute and undercuts the policy and purpose of UM/UIM statutes.

The rationale for uninsured motorist coverage is "to permit the insured injured person the same recovery which would have been available to him had the tortfeasor been insured to the

same extent as the injured party." *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 935 (Me. 1983). As the court said in *Beek*:

> [T]he requirement for the inclusion of UM coverage applies to every policy issued in this State and the statute contains no suggestion that relief from this obligation is to be implied when a person owning two vehicles has purchased two policies of insurance from two different carriers.

135 N.J. Super. at 5, 342 A.2d at 549.

Courts considering the question have generally supported the right of an insured to stack multiple policies of UM coverage owned by the insured. *State Farm Mut. Auto. Ins. Co. v. Hancock*, 164 Ga. App. 32, 32–33, 295 S.E.2d 359, 360 (1982); *Connolly*, 455 A.2d at 935; *American Motorist Ins. Co. v. Sarvela*, 327 N.W.2d 77, 79 (Minn. 1982); *Shepherd v. American States Ins. Co.*, 671 S.W.2d 777, 780 (Mo. 1984); *Beek*, 135 N.J. Super. at 5–6, 342 A.2d at 549; *Employers' Fire Ins. Co. v. Baker*, 119 R.I. 734, 747–48, 383 A.2d 1005, 1009–10 (1978); see also *Barnett v. Crosby*, 5 Kan. App. 2d at 98, 612 P.2d at 1250 (court recognizes that injured motorcyclist could have stacked UM provisions in car and motorcycle policies, had he purchased UM coverage on motorcycle). But see *Mitchell v. State Farm Mutual Auto. Ins. Co.*, 227 Va. 452, 458–59, 318 S.E.2d 288, 292 (1984)(words "this insurance" interpreted to mean that insurance coverage limits refer only to policy to which attached, and that each policy must be considered independently to determine whether tortfeasor is underinsured).

We are persuaded that, to effectuate the purposes of Vermont's uninsured motorist statute, it is inconsistent to permit an insurer to limit its liability for mandatory UM coverage by reliance on antistacking provisions. Although we implied some disapproval of interpolicy antistacking provisions in *Sanders*, 148 Vt. at 503, 536 A.2d at 918, we now explicitly hold that interpolicy, antistacking provisions violate the terms of § 941 and will not be enforced.

There is no rationale for treating UIM coverage differently from UM coverage with respect to stacking. UIM statutes were widely adopted following recognition by many states that failure to consider the *under*insured motorist often led to anomalous and unjust results. As the Georgia court held in *State Farm Mutual Automobile Insurance Co. v. Hancock*:

Thus, while a motorist insured over the minimum coverage could obtain full redress to the maximum of his policies when the tortfeasor was uninsured, he was denied any recovery of excess damages through his own coverage when the tortfeasor was only minimally insured. This created the anomolous situation whereby a prudent motorist with maximum insurance coverage was actually penalized if injured by a tortfeasor who was in compliance with the minimum no fault coverage requirements.

164 Ga. App. at 33, 295 S.E.2d at 360. The purpose of the legislation that ensued in Georgia and other states, including Vermont, was to place UM and UIM cases on the same equitable footing, providing the prudent motorist with maximum insurance coverage with the same remedy against an underinsured motorist as against one that was uninsured. See Comment, *Stacking of Uninsured Motorist Coverage*, 49 Mo. L. Rev. 571 (1984). As we said in *Webb v. United States Fidelity & Guaranty Co.*, 158 Vt. 137, 141, 605 A.2d 1344, 1347 (1992) (citations omitted):

Vermont's statutory underinsured motorist provision provides what is sometimes referred to as "gap" coverage, because it "fills the 'gap' between the tortfeasor's liability coverage and the injured party's underinsured motorist coverage." *North River Ins. Co. v. Tabor*, 934 F.2d 461, 464 (3d Cir. 1991). Gap coverage "places the insured party in the same position that he would have been in had the tortfeasor carried liability insurance in the amount of the insured's underinsured motorist policy limit." *Id.*

Against the backdrop of these policy considerations, Jefferson's argument that it should be allowed to cordon off its UM/UIM insurance and measure underinsurance by comparing only *its* coverage with the liability limit of the tortfeasor's vehicle offends the basic concept of UM/UIM coverage in two ways. First, it fails to provide "the insured injured person the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party," *Connolly*, 455 A.2d at 935, and second, it limits plaintiff to a smaller recovery against an underinsured motorist than he would have recovered from an uninsured motorist. *Id.*

An examination of the facts before us illustrates the second of these points. If the tortfeasor in the present case had been an *un*insured motorist, plaintiff's maximum recovery (assuming damages equalled or exceeded such amount) would have been $400,000—$100,000 under the Jefferson policy and $300,000 under the Peerless. Under Jefferson's theory,[3] plaintiff would be penalized $100,000 for having an accident with an underinsured, rather than uninsured, motorist. This would violate the purpose of § 941(f).

Therefore, we hold that plaintiff may stack the UM/UIM provisions of the Jefferson and Peerless policies, and that insurance policies purporting to prohibit stacking violate the statutory language and underlying purpose of Vermont's UM/UIM statute.

*Reversed and remanded.*

---

[3] I.e., the theory that plaintiff was not underinsured as to the Jefferson policy because the amount of the tortfeasor's insurance equalled the amount of Jefferson's UM/UIM coverage.