**Danielle Lee DUSHARM, Plaintiff,**

v.

**NATIONWIDE INSURANCE COMPANY, Defendant.**

**No. 2:97–CV–371.**

United States District Court,
D. Vermont.

April 29, 1999.

Marikate Ellen Kelley, Ward, Kelley & Babb, South Burlington, VT, for Danielle Lee Dusharm, plaintiff.

Michael John Gannon, Susan J. Flynn, Affolter, Gannon & Flynn, Burlington, VT, for Nationwide Insurance Company, defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

In this complaint for declaratory relief, Plaintiff Danielle Lee Dusharm seeks a judgment that Defendant Nationwide Insurance Company ("Nationwide") is obligated to provide underinsured motorist ("UIM") coverage for her under policies issued by Nationwide to her father and her mother. The parties have cross-moved for summary judgment. At issue is whether Nationwide must provide UIM coverage when the tortfeasor motorist's insurance coverage is unavailable to Dusharm due to multiple claimants. To date, the issue has not been addressed by the Vermont Supreme Court. For the reasons stated be-

low, the Court holds that the tortfeasor's vehicle is underinsured for purposes of triggering coverage under Nationwide's policies. Accordingly, Dusharm's Motion for Summary Judgment (paper 20) is granted in part; Nationwide's Motion for Summary Judgment (paper 23) is denied.

## I. *Factual Background*

The following facts are undisputed. On October 3, 1994, 16–year old Danielle Dusharm and Hannah Smith, of Charlotte, Vermont, were passengers in a 1989 Ford Taurus automobile owned by Timothy and Anne Malloy and operated by their daughter Erin Malloy. At approximately 7:53 a.m. Erin Malloy was driving south on Route 116 in Hinesburg, Vermont when she struck a vehicle traveling north which was owned and operated by Susan Lathrop. Malloy was primarily at fault for causing the accident. As a result of the accident Susan Lathrop was gravely injured, and incurred damages in excess of $700,000. Hannah Smith incurred damages including medical bills in excess of $6,500. Danielle Dusharm incurred damages in excess of $50,000,[1] with medical bills in excess of $18,000.

At the time of the accident, Erin Malloy was insured under a liability policy issued by The Concord Group Insurance Companies ("Concord Group"), which contained a single liability limit of $300,000. On August 7, 1996, Concord Group offered to settle the Smith and Dusharm claims for $1,000 apiece, noting that the claims of Susan Lathrop alone far exceeded the Smith and Dusharm claims, as well as the limits of its policy. By August 22, 1997, Concord Group had settled the Smith claim for $1,000 and the Lathrop claim for the limits of the policy, less $1,000 set aside for Dusharm's claim.

■ At the time of the accident, Danielle Dusharm lived with her father, Robin Dusharm, although her mother, Catherine Lapierre, had her legal custody. For purposes of these motions Nationwide accepts that her father's and her mother's automobile insurance policies both apply to Danielle. Robin Dusharm had an automobile insurance policy with Nationwide, which provided uninsured motorists ("UM") coverage[2] for relatives. The policy contained limits of $50,000 per person and $100,000 per occurrence. Catherine Lapierre also had automobile insurance with Nationwide, which provided UM coverage for relatives. The amount of that coverage is in dispute, but for purposes of these motions Nationwide accepts that the UM limits on the Lapierre policy are $100,000 per person and $300,000 per occurrence.[3]

Nationwide has denied UIM coverage, stating that because the Malloy policy contained a $300,000 limit of liability, the Malloy vehicle was not underinsured with respect to the combined per person limits of Nationwide's policies.

## II. *Discussion*

### A. *Legal Standards*

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England,* 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548,

1. Uncontested for summary judgment purposes only.

2. In Vermont, uninsured motorists coverage includes coverage for claims against the owner or driver of underinsured as well as uninsured motor vehicles. Vt. Stat. Ann. tit. 23, § 941(a) (1987).

3. The Lapierre policy was issued to Catherine Lapierre and James Thacker. Nationwide contends that Thacker signed a document choosing lower UM/UIM limits of $20,000 per person and $40,000 per accident. In her amended complaint, Dusharm has alleged that Nationwide failed to obtain an informed and voluntary election to make the uninsured limits lower than the $100,000/$300,000 limits of liability on the policy.

91 L.Ed.2d 265 (1986)). Jurisdiction of this matter is based on diversity, 28 U.S.C. §§ 1332, 1441, and the Court applies Vermont law to the substantive issues. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As this is a matter that has not yet been addressed by the Vermont Supreme Court, this Court must determine the issues as it believes that body would determine them. *See Mainline Tractor & Equip. Co. v. Nutrite Corp.,* 937 F.Supp. 1095, 1101 (D.Vt.1996); *Paquette v. Deere and Co.,* 719 A.2d 410, 413 (Vt.1998).

### B. *The Policy Language*

The UM/UIM coverage provisions in Dusharm's two Nationwide policies are identical. Both contain an "Endorsement 2008A uninsured motorists coverage (Vermont)" ("UM endorsement"). The UM endorsement states in relevant part: "We will pay compensatory damages, ... which are due by law to [the named insured] or a relative from the owner or driver of an uninsured or underinsured motor vehicle because of bodily injury suffered by [the named insured] or a relative ..." An underinsured motor vehicle is defined as "one with respect to which the sum of the limits of liability under all liability bonds and insurance policies applicable to the accident is less than the limits of this coverage."

■ According to the policy language, the limit of the Malloy liability policy applicable to the accident is to be compared with the limits of UM coverage under the Nationwide policies.[4] Stacked, those limits are $150,000 per person and $400,000 per accident. Because this is a multi-victim accident, the per accident limitation is the key provision for determining whether a vehicle is underinsured. *See Botting v. Allstate Ins. Co.,* 707 A.2d 1319, 1321 (Me. 1998); *Erie Ins. Co. v. Thompson,* 330 Md. 530, 625 A.2d 322, 325 (1993) (quoting *Wa-*

---

**4.** Under Vermont law, an injured insured may cumulate, or "stack," the UM/UIM coverage provisions in the policies which apply to her.

*ters v. United States Fidelity & Guar. Co.,* 328 Md. 700, 616 A.2d 884, 890. (1992)). The Malloy vehicle is underinsured with respect to Dusharm if its $300,000 per accident limit of liability is less than the per accident limit of Dusharm's UM coverage. Because $300,000 is less than $400,-000, the Malloy vehicle is underinsured.

■ Once the determination is made that Dusharm has a UIM claim because the Malloy vehicle is underinsured, she may obtain recovery against the Nationwide policies if her damages exceed her recovery from the tortfeasor's liability insurance, up to the per person limits of the policies. Of course, any payments by the tortfeasor's liability insurance will be set off against the total UM coverage. UM endorsement at 4 (Limits of Payment ¶ 7); *Brunet v. American Ins. Co.,* 660 F.Supp. 843, 848–49 (D.Vt.1987). Thus, Dusharm has a potential recovery from the Nationwide policies of $149,000.

Under this analysis of the policy language, it is unnecessary to reach the issue of whether UIM coverage is triggered when a tortfeasor's liability insurance is equal to or greater than the UIM coverage, but is unavailable due to multiple claimants. Nevertheless, the Court will address the issue, in light of the fact that the amount of UM/UIM coverage under the Lapierre policy is disputed. If Dusharm's total UM/UIM coverage under the Nationwide policies is $70,000/$140,000, then according to Nationwide's interpretation of the language of the policies, the Malloy vehicle is not underinsured and the policies' UM/UIM coverage is not triggered. Dusharm claims, however, that the policy language is ambiguous and should be construed in favor of coverage.

■ A policy must be construed according to its terms and the evident intent of the parties as expressed in the policy language. *City of Burlington v. National Monteith v. Jefferson Ins. Co.,* 159 Vt. 378, 387, 618 A.2d 488, 493 (1992).

*Union Fire Ins. Co.,* 163 Vt. 124, 127, 655 A.2d 719, 721 (1994) (citing *Sanders v. St. Paul Mercury Ins. Co.,* 148 Vt. 496, 500, 536 A.2d 914, 916 (1987)). This principle avoids "binding insurers to coverage that the parties did not reasonably contemplate." *State Farm Mut. Auto. Ins. Co. v. Roberts,* 166 Vt. 452, 461, 697 A.2d 667, 672 (1997). In determining the reasonable expectations of parties to an insurance contract, the Court "must consider the policy in its entirety with an eye toward its general purpose." *Id.*

Disputed terms in an insurance policy should be accorded their "plain, ordinary and popular meaning." *Burlington v. National Union Fire,* 163 Vt. at 127–28, 655 A.2d at 721. *See also Gerrish Corp. v. Universal Underwriters Ins. Co.,* 947 F.2d 1023, 1030 (2d Cir.1991). An insurer will not be deprived of unambiguous policy provisions which benefit it. *Peerless Ins. Co. v. Wells,* 154 Vt. 491, 494, 580 A.2d 485, 487 (1990). Principles of fairness demand, however, that any ambiguity in the language of the policy be resolved in favor of the insured. *City of Burlington v. Associated Elec. & Gas Ins. Services, Ltd.,* 164 Vt. 218, 221, 669 A.2d 1181, 1183 (1995); *Garneau v. Curtis & Bedell, Inc.,* 158 Vt. 363, 367, 610 A.2d 132, 134 (1992). *See also Gerrish, id.* Language in an insurance contract is ambiguous if "it is reasonably or fairly susceptible of different constructions," but a court's duty is to enforce the agreement made, not to rewrite it on behalf of a party. *Northern Sec. Ins. Co. v. Hatch,* 165 Vt. 383, 386, 388, 683 A.2d 392, 395, 396 (1996).

Dusharm argues that in the multiple claimant context the policy language "limits of liability under all . . . insurance policies applicable to the accident" is ambiguous, that is, it is unclear whether the phrase refers to the express policy limits of liability coverage, or to the amount of insurance actually available to the injured insured. Where "limits of liability" language is ambiguous, it is construed against the insurer. *Sanders,* 148

Vt. at 500, 536 A.2d at 916. With due respect to the courts which have held that similar language is "potentially ambiguous," *see, e.g., Gonzales v. Millers Cas. Ins. Co.,* 923 F.2d 1417, 1420 (10th Cir. 1991), this Court views the policy language in question as plain, clear and susceptible of just one reasonable construction: that "limits of liability" means "limits of liability," not "available proceeds." *See, e.g., Alguila v. Safety Ins. Co.,* 416 Mass. 494, 624 N.E.2d 79, 80 (1993); *Rodriguez v. General Accident Ins. Co.,* 808 S.W.2d 379, 382–83 (Mo.1991) (en banc). The fact that "limits of liability" refers to policies "applicable to the accident," not policies applicable to the injured insured, reinforces this reading.

Concluding that the policy language is unambiguous does not end the analysis, however. Policy language which reduces the amount of coverage mandated by statute will not be enforced. *Monteith v. Jefferson Ins. Co.,* 159 Vt. 378, 381, 618 A.2d 488, 490 (1992) (quoting *Sanders,* 148 Vt. at 498–99, 536 A.2d at 915–16); *Rhault v. Tsagarakos,* 361 F.Supp. 202, 205 (D.Vt. 1973).

### C. *The Statutory Language*

At issue therefore is whether Nationwide's UM endorsement, which fails to take into account the possibility that a multi victim accident will render the limits of a tortfeasor's liability insurance unavailable to an injured insured, is consistent with Vermont's statutory requirements pertaining to underinsured motorists coverage. No policy can be issued which reduces the amount of coverage mandated by statute. *Monteith,* 159 Vt. at 381, 618 A.2d at 490. The terms of a policy will not be enforced if they detract from the requirements of the statute. *Rhault,* 361 F.Supp. at 205.

By statute in Vermont, all policies of automobile liability insurance must provide uninsured and underinsured motorists coverage to their insureds. Vt. Stat. Ann.

tit. 23, § 941(a) (1987). As the Vermont Supreme Court has stated, the requirement that liability policies include UM coverage dates from 1968. *Merkel v. Nationwide Ins. Co.*, 166 Vt. 311, 314, 693 A.2d 706, 708 (1997). The legislature subsequently amended Section 941 to require coverage with respect to underinsured or hit-and-run motor vehicles, effective 1981. By this amendment the legislature intended "to eliminate the anomaly that insureds were better off when they were hit by an uninsured driver than when they were.hit by a driver with very little liability coverage." *Id.* The purpose of UIM legislation was "to place UM and UIM cases on the same equitable footing, providing the prudent motorist with maximum insurance coverage with the same remedy against an underinsured motorist as against one that was uninsured." *Monteith,* 159 Vt. at 386, 618 A.2d at 492.

■■■■ Vermont's statutory UIM provision provides "gap" coverage, as opposed to "excess" coverage. *Webb v. United States Fidelity & Guar. Co.*, 158 Vt. 137, 141, 605 A.2d 1344, 1347 (1992). In gap coverage jurisdictions such as Vermont, a tortfeasor is underinsured when the injured party's UM/UIM coverage exceeds the tortfeasor's liability coverage. By contrast, in excess theory jurisdictions a tortfeasor is underinsured when the injured party's damages exceed the tortfeasor's liability coverage. *See North River Ins. Co. v. Tabor,* 934 F.2d 461, 464 (3d Cir. 1991); *Waters,* 616 A.2d at 889–90.

Section 941(f) of title 23 defines an underinsured motor vehicle as one whose "personal injury limits of liability at the time of an accident are less than the limits of uninsured motorists coverage applicable to any injured party legally entitled to recover damages under said uninsured motorist coverage." Vt. Stat. Ann. tit. 23, § 941(f) (1987). Dusharm argues that this language is potentially ambiguous in the multiple claimant context, citing to case law from other jurisdictions. Again, this Court disagrees. The statutory language

clearly requires a comparison between personal injury limits of liability and UM limits to determine whether a vehicle is underinsured. *See Stanhope v. Lumbermens Mut. Ins. Co.*, 155 Vt. 645, 646, 582 A.2d 150, 151 (1990) (mem.) (plain meaning of statute indicates comparison between liability limits and UM limits); *Concord Gen. Mut. Ins. Co. v. National Grange Mut. Ins. Co.*, No. S20–87Ac, slip op. at 4 (Add.Super.Dec. 6, 1988). There is no conflict between the terms of the policy and the terms of the statute.

Examination of case law from other jurisdictions, moreover, yields the conclusion that sister courts' analyses are of limited assistance in interpreting Vermont's UIM statute, because the statutory language varies substantially. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Diem,* 358 So.2d 39, 41 (Fla.Dist.Ct.App.1978) (statute refers to benefits available to insured from liability policy); *Cummins v. Country Mut. Ins. Co.*, 178 Ill.2d 474, 227 Ill.Dec. 539, 687 N.E.2d 1021, 1024 (1997) (statute refers to amount of proceeds actually recovered); *Edwards v. Vernon Fire & Cas. Ins. Co.*, 571 N.E.2d 1306, 1308 (Ind.Ct.App.1991) (statute provides that amount payable to insured is difference between amount paid by liable party and limit of UIM coverage); *Score v. American Family Mut. Ins. Co.*, 538 N.W.2d 206, 208 (N.D.1995) (statute provides for gap coverage modified to account for payments to other claimants); *Brown v. Erie Ins. Co.*, 35 Ohio App.3d 11, 519 N.E.2d 408, 410 (1986) (statute refers to limits of liability coverage available for payment); *Leal v. Northwestern Nat. County Mut. Ins. Co.*, 846 S.W.2d 576, 578 (Tex.App.1993) (statute refers to liability limits which have been reduced by payment to other claimants).

■■■■ Ordinarily, a court need proceed no further with statutory construction when the meaning of the language is plain. "[I]f 'confusion or ambiguity does not appear, then the statute is not construed, but rather is enforced in accordance with its express terms.'" *Sanders,* 148 Vt. at 504,

536 A.2d at 918 (quoting *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 529, 496 A.2d 154, 162 (1985)). The plain, ordinary meaning of statutory language is presumed to be the expression of the legislative intent. *State v. Larose*, 144 Vt. 492, 493–94, 479 A.2d 162, 163–64 (1984). If, however, enforcing the plain language of a statute would "do[ ] violence to the legislative scheme," the "letter of a statute or its literal sense must yield where it conflicts with legislative purpose." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986). The primary objective of the court is to give effect to the intention of the legislature. *Roddy v. Roddy*, 721 A.2d 124, 128 (Vt.1998). Not only the statute's language, but its subject matter, its consequences, and the reason and spirit of the law must be examined. *Id.; Merkel*, 166 Vt. at 314, 693 A.2d at 707–08.

The Vermont Supreme Court has consistently stated that Vermont's UIM statute was adopted to address the unjust and anomalous situation whereby an insured was penalized if injured by an inadequately insured as opposed to an uninsured tortfeasor. *Merkel*, 166 Vt. at 314, 693 A.2d at 708; *Monteith*, 159 Vt. at 385–86, 618 A.2d at 492. "The purpose of the [UIM] legislation . . . was to place UM and UIM cases on the same equitable footing, providing the prudent motorist with,maximum insurance coverage with the same remedy against an underinsured motorist as against one that was uninsured." *Id.*, 159 Vt. at 386, 618 A.2d at 492. *See also Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 104 (2d Cir.1997) (statute's goal to ensure that "drivers responsible enough to procure insurance coverage for accidents they themselves cause are protected against accidents caused by irresponsible individuals who fail to obtain adequate insurance"); *State Farm Mut. Auto Ins. Co. v. Powers*, —— A.2d ——, No. 98–068, 1999 WL 194531 (Vt. Apr.9, 1999) (UM/UIM coverage has broad remedial purpose); *Travelers Companies v. Liberty Mut. Ins. Co.*, 164 Vt. 368, 375, 670 A.2d 827, 831 (1995) (benefit of UIM coverage is protection against probability of deficient recovery from tortfeasor).

If the Malloy vehicle had been uninsured, Dusharm's recovery under her parents' policies' UM/UIM coverage would have been $150,000, assuming her damages exceeded this amount. If Nationwide's argument is followed, and the Malloy vehicle is not considered underinsured, Dusharm's recovery is limited to the $1,000 she received from the tortfeasor's insurance, plus any payments she may have received under medical payments and family compensation provisions. Obviously, in a multiple claimant accident the prudently insured motorist does not have the same remedy against an underinsured motorist as she does against an uninsured motorist, if the literal language of Vermont's statute is applied.

Nationwide has drawn this Court's attention to *Kelly v. State Farm Mut. Auto. Ins. Co.*, No. S–109–5–92 O.c. (Orl.Sup. Sept. 22, 1993), a Vermont state trial court decision which rejected the argument that UIM coverage should be determined based on the amount of tortfeasor liability coverage actually applicable to the injured insured. This Court gives proper regard to relevant rulings of the state trial courts, but in the *Kelly* decision the court seems to have mistakenly equated "applicable coverage" with the "excess coverage" theory rejected by the Vermont Supreme Court in *Webb*, 158 Vt. at 141–42, 605 A.2d at 1347. In an excess coverage jurisdiction, an insured would recover UIM benefits until her policy limits were reached or she was fully compensated for her damages, with the tortfeasor's liability insurance being offset against total damages, instead of against the UIM policy limits. That is not the recovery being sought here, and the *Kelly* reasoning is not persuasive.

Other jurisdictions have discerned different or additional legislative purposes in their UIM statutes than to place uninsured

and underinsured cases on the same equitable footing; consequently most of the case law from sister states remains of limited value. *See, e.g., American States Ins. Co. v. Estate of Tollari,* 362 N.W.2d 519, 522 (Iowa 1985) (legislature intended UIM coverage to be excess coverage); *Mullen v. Liberty Mut. Ins. Co.,* 589 A.2d 1275, 1277 (Me.1991) (policy was compensation of injured parties, encouragement of settlements, plus early determination of applicability of UIM coverage); *Alguila,* 624 N.E.2d at 81–82 (legislative purpose was partial compensation of injured insured plus lowering of insurance premiums); *Cossitt v. Federated Guar. Mut. Ins. Co.,* 541 So.2d 436, 441 (Miss.1989) (policy was to assure availability of minimum coverage for each accident, not for each injured person); *Hamilton v. Farmers Ins. Co.,* 107 Wash.2d 721, 733 P.2d 213, 216 (1987) (en banc) (purpose of statute was excess coverage); *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575, 581 (1990) (in excess coverage state, policy was full compensation of injured party for damages not covered by negligent tortfeasor). Where, however, the legislative intent is held to be compensation of the blameless injured insured, the statute has been liberally construed to effect that intent. *See Gonzales,* 923 F.2d at 1422; *Palisbo v. Hawaiian Ins. & Guar. Co.,* 57 Haw. 10, 547 P.2d 1350, 1354 (1976); *State Farm Mut. Auto. Ins. Co. v. Valencia,* 120 N.M. 662, 905 P.2d 202, 205 (Ct.App.1995) (citing *Gonzales,* 923 F.2d at 1422–23).

The principal objective of the Vermont legislature in requiring automobile insurance policies to include UIM coverage was to ensure that victims of inadequately insured drivers would receive compensation. *Canedy,* 126 F.3d at 104. An individual choosing to purchase more than the minimum UIM coverage required under the financial responsibility statute is purchasing protection against the possibility of a deficient recovery from a negligent driver. *Travelers,* 164 Vt. at 375, 670 A.2d at 831. Under Nationwide's theory, such a policyholder would have paid a premium for coverage that would depend entirely on the happenstance of how many persons were injured in the same accident as herself. This outcome is absurd as well as unjust. UIM coverage is personal protection, and attaches not to the vehicle, or to the accident, but to the insured. *Monteith,* 159 Vt. at 381, 384, 618 A.2d at 490, 491. To penalize Dusharm for having an accident with an inadequately insured rather than an uninsured motorist would violate the purpose of Section 941(f). *See id.,* 159 Vt. at 385, 618 A.2d at 492.

This Court predicts, therefore, that in a multiple claimant case the Vermont Supreme Court would hold that a driver is inadequately insured if her liability policy is depleted below an injured insured's limits of UIM coverage due to multiple claimants. An insurance policy which purports to deny UIM coverage where the amount of the tortfeasor's liability insurance available to the injured insured is less than her UIM coverage limits would be deemed contrary to the broad remedial purpose of Section 941, and would not be enforced.

## III. *Conclusion*

Plaintiff's Motion for Summary Judgment (paper 20) is granted to this extent: the Malloy vehicle is underinsured for purposes of triggering coverage under Nationwide's policies. Nationwide is entitled to offset payments by the tortfeasor's liability insurance. Defendant's Motion for Summary Judgment (paper 23) is denied.