2005 VT 87

### Randal FEELEY v. ALLSTATE INSURANCE COMPANY

[882 A.2d 1230]

No. 04-191

¶ 1. August 17, 2005. Defendant Allstate Insurance Company appeals from a Franklin Superior Court judgment on plaintiff Randal Feeley's claim for underinsured motorist (UIM) benefits following a work-related motor vehicle accident. At issue in Allstate's appeal is whether Feeley's UIM policy allows Allstate to deduct the amount of workers' compensation benefits Feeley received pursuant to New York law from the UIM

proceeds due under his personal policy with Allstate. The trial court entered judgment against Allstate on Feeley's claim, and we now affirm.

¶ 2. Feeley is a Vermont resident who was working for a New York transportation company at the time of the motor vehicle accident giving rise to this litigation. The driver responsible for the accident was underinsured, and his liability insurer paid the policy's $25,000 liability limit after the accident. Feeley was covered by his employer's New York workers' compensation policy, and he received benefits pursuant to New York law. Feeley sought additional compensation for his injuries under a Vermont-issued UIM policy with a $300,000 limit. Coincidentally, Allstate was both the workers' compensation carrier for Feeley's New York employer and his Vermont UIM insurer.

¶ 3. Allstate refused to pay Feeley the full amount of UIM benefits available under his policy. Allstate believed that Feeley's policy entitled it to reduce the UIM obligation by the amount of workers' compensation Allstate had paid Feeley — totaling approximately $200,000 — pursuant to New York law. Seeking to enforce the terms of the UIM policy, Feeley filed a declaratory judgment action against Allstate in Franklin Superior Court. While admitting that New York law prohibited Allstate, in its capacity as a workers' compensation insurer, from placing a lien on Feeley's UIM proceeds, the company urged the Franklin Superior Court to interpret Feeley's UIM policy to allow a reduction in UIM proceeds by the amount of workers' compensation benefits he received from Allstate. The company argued that the reduction was necessary to prevent Feeley from receiving "double recovery."

¶ 4. In a preliminary order, the trial court ruled that (1) New York law governed Feeley's receipt of workers' compensation, and (2) pursuant to New York law, Allstate could not recoup its workers' compensation payments from UIM proceeds payable under Feeley's Vermont policy. The court reserved the ultimate question of whether Vermont law or the UIM policy itself provided a basis for the offset Allstate sought until after the parties completed arbitration on the amount of Feeley's damages. After the arbitration panel set Feeley's damages at $450,000, Feeley moved for summary judgment. Allstate had paid Feeley only $210,000 in UIM benefits (the arbitration panel's noneconomic damages award) so Feeley asked the court to enter judgment for the remaining amount owed under his Allstate policy.* The trial court granted Feeley's motion and entered judgment in his favor.

¶ 5. Allstate appeals, advancing the same arguments it presented to the trial court. Like the trial court, we review Allstate's claims under the summary judgment standard, which allows the court to enter judgment for any party if the material facts are undisputed and the law supports the judgment. V.R.C.P. 56(c)(3); *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310.

¶ 6. Before addressing Allstate's arguments, we note that this dispute arose because Allstate played two roles here. Allstate was both the workers' compensation insurer for Feeley's employer, obligated to pay Feeley benefits in accordance with New York law, and Feeley's Vermont UIM insurer with obligations to the insured mandated by the Vermont Legislature. In this case,

---

* The amount remaining was $65,000. That figure results from deducting the tortfeasor's $25,000 payment from the remaining $90,000 (the $300,000 policy limit minus the $210,000 UIM payment) due under Feeley's UIM policy.

the role with which we are concerned is the latter: Allstate as a Vermont UIM insurer.

¶ 7. Allstate argues that the UIM policy it furnished to Feeley gave the company the right to reduce its UIM obligation by "all amounts payable under any workers compensation law, disability benefits law, or similar law, Automobile Medical Payments, or any similar automobile medical payments coverage." The provision at issue is enforceable so long as it is not inconsistent with Vermont's UIM law. See *Sanders v. St. Paul Mercury Ins. Co.*, 148 Vt. 496, 507, 536 A.2d 914, 921 (1987) (explaining that the Court will enforce plain meaning of an insurance policy provision in the absence of ambiguity, statutory violation, or "inherently unfair or misleading language"). The critical question, then, is whether Vermont's UIM statute, 23 V.S.A. § 941, allows an insurer to reduce the insured's UIM payment by the amount of workers' compensation benefits that are payable to the insured pursuant to the laws of another state.

¶ 8. Our analysis begins with the purpose of § 941, the uninsured/underinsured motorist provision of Vermont's Financial Responsibility Law, 23 V.S.A., chapter 11. Motor vehicle insurers may not sell an automobile liability policy in Vermont without coverage for accidents involving uninsured (UM) or underinsured motorists. 23 V.S.A. § 941(a); *Travelers Cos. v. Liberty Mut. Ins. Co.*, 164 Vt. 368, 374, 670 A.2d 827, 830 (1995). The coverage is intended to provide "the prudent motorist with maximum insurance coverage," *Monteith v. Jefferson Ins. Co.*, 159 Vt. 378, 386, 618 A.2d 488, 492 (1992), when involved in an accident with a marginally insured (or uninsured) motorist. *Colwell v. Allstate Ins. Co.*, 2003 VT 5, ¶ 10, 175 Vt. 61, 819 A.2d 727. Section 941 defines when a driver is "underinsured" by comparing the tortfeasor's liability limits with the limits of the

insured's UIM coverage. 23 V.S.A. § 941(f). If the insured purchased UIM coverage greater than the limits of liability in the tortfeasor's policy, the tortfeasor is "underinsured" within the meaning of § 941. *Id.*; *Colwell*, 2003 VT 5, ¶ 8. This type of "gap coverage" "place[s] the insured in the same position as if, at the time of the accident, the tortfeasor had liability coverage equal to the insured's UIM coverage." *Colwell*, 2003 VT 5, ¶ 14; see *Webb v. U.S. Fid. & Guar. Co.*, 158 Vt. 137, 141, 605 A.2d 1344, 1347 (1992) (describing Vermont's UIM statute as filling the gap between the tortfeasor's liability coverage and the insured's UIM coverage).

¶ 9. A policy clause limiting UIM coverage in a manner inconsistent with § 941's central purpose is unenforceable. *Monteith*, 159 Vt. at 385-86, 618 A.2d at 492-93; see *Muir v. Hartford Accident & Indem. Co.*, 147 Vt. 590, 593-94, 522 A.2d 236, 238 (1987) (invalidating liability payment set-off provision in uninsured motorist policy because it conflicted with purpose of uninsured motorist law to ensure coverage as if all drivers had insurance). In *Monteith*, the Court invalidated the insurer's "antistacking" provision, thereby allowing the insured to add the limits of all his UIM policies to determine the extent of the tortfeasor's underinsurance. 159 Vt. at 384, 618 A.2d at 491. The provision at issue was irreconcilable with the statutorily mandated coverage because it failed to provide "'the insured injured person the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party.'" *Id.* at 384-85, 618 A.2d at 492 (quoting *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 935 (Me. 1983)). In *Muir*, the Court held unenforceable a provision that allowed the UM insurer to reduce its UM obligation to the passenger/insured by liability payments made by the insurer and the third-party mo-

torist's liability carrier. 147 Vt. at 593-94, 522 A.2d at 238-39. Key to the Court's decision in *Muir* was the overriding purpose of § 941: protecting the insured from the misfortune of being involved in an accident with a financially irresponsible driver. *Id.*

¶ 10. Applying that principle to the facts of this case, we conclude that the provision upon which Allstate relies to limit its UIM liability is unenforceable as inconsistent with the purpose of mandatory UIM coverage. Had the tortfeasor been insured to the same extent as Feeley, $300,000 in compensation from the tortfeasor's liability insurer would have been available to him. Cf. *Caberto v. Nat'l Union Fire Ins. Co.*, 881 P.2d 526, 531 (Haw. 1994) (explaining that a policy provision that reduces the amount of UM proceeds payable to the insured by the amount of workers' compensation benefits he received does not give the insured the same amount of damages he would have been entitled to receive had the tortfeasor been adequately insured). No deduction for workers' compensation or other disability payments would have been permitted. *Id.* The UIM policy Allstate furnished thus "undercuts the policy and purpose of UM/UIM statutes" and cannot be enforced. *Monteith*, 159 Vt. at 384, 618 A.2d at 492.

¶ 11. Allstate argues that Feeley "is trying to take advantage of a quirk in New York law to get double recovery that is precluded under Vermont law." Rather than preventing double recovery for Feeley, Allstate is in fact seeking to reduce its obligation to its insured under Vermont UIM law because it was also the insurer responsible for paying Feeley's workers' compensation benefits. If Feeley's UIM policy had been provided by a different company, the weakness of Allstate's argument on the terms of the UIM policy is readily apparent. The only statutorily authorized offset for UIM proceeds is the amount the insured ob-

tains from "any person legally responsible for the damage or personal injury." 23 V.S.A. § 941(e). Although § 941(e) does not preclude other offsets, any limit on UIM coverage may not reduce the recovery which would have been available to the insured had the tortfeasor purchased insurance with the same (or greater) limits as the insured. *Monteith*, 159 Vt. at 386, 618 A.2d at 492. Reducing Feeley's UIM proceeds by any amounts "payable under any workers compensation law" results in lesser recovery than would have been available to Feeley if the tortfeasor had been as financially responsible as he.

¶ 12. Allstate argues that § 941(e) should be read in pari materia with § 624(e) of the Vermont Workers' Compensation Act to ensure that Feeley is not overcompensated for his losses. If the Vermont Workers' Compensation Act applied in this case, Allstate would have a point. Section 624(e) allows a workers' compensation carrier to recover from the injured worker any amounts the worker receives from a privately purchased insurance policy, but only to prevent "double recovery." 21 V.S.A. § 624(e); *Travelers Ins. Co. v. Henry*, 2005 VT 68, ¶ 11, 178 Vt. 287, 882 A.2d 1133. No one disputes, however, that New York law governs Feeley's receipt of workers' compensation benefits, and thus § 624(e) of Vermont's workers' compensation scheme has no application in this case. Allstate does not present any legal authority to support its novel suggestion that the trial court, or this Court, may utilize the doctrine of in pari materia when one of the statutes at issue is ruled inapplicable to the claim before the court. Considering that § 624(e) was inapplicable to Feeley's receipt of workers' compensation benefits, the trial court did not err by refusing to interpret § 941(e) in pari materia with § 624(e).

¶ 13. We note that Allstate's reliance on § 624(e) demonstrates that its interest

in this case is not as Feeley's UIM carrier, but, rather, as the workers' compensation insurer responsible for paying him benefits in accordance with New York law. Only a Vermont workers' compensation carrier may reach an insured's UIM proceeds under § 624(e), however, and then only to the extent that doing so prevents double recovery. See *Henry*, 2005 VT 68, ¶ 11. In effect, Allstate is trying to avoid the "quirk" in New York law, which precludes the offset Allstate seeks, by invoking a Vermont statute that has no relevance to Feeley's UIM claim. We will not "subvert an important rationale underlying [§ 941] by allowing a quirk in New York's law to upset policy underpinnings of Vermont's law." *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 591, 595 A.2d 264, 267 (1991).

¶ 14. Finally, Allstate argues that the trial court erred by overruling a preliminary order it issued by disallowing the offset for workers' compensation benefits. Allstate asserts that the preliminary order, issued in November 2001, definitively established Allstate's right of recoupment from Feeley's UIM proceeds. Feeley responds that Allstate has misconstrued the order. We agree. The November 2001 order expressly reserved ruling on the offset issue until the parties had completed arbitration. It explained that the question of "whether the bar against double recovery applies to this case" must await the arbitrators' decision on Feeley's total damages. Thus, the court did not, as Allstate claims, determine that Feeley had to repay a portion of his New York workers' compensation benefits from the UIM proceeds due under his policy with Allstate.

*Affirmed.*