TRAVELERS INSURANCE COMPANY, Plaintiff–Appellant,

v.

John HENRY, Defendant–Appellee

v.

Co–Operative Insurance Companies, Third–Party Defendant.

Docket No. 03–9307.

United States Court of Appeals, Second Circuit.

Argued: June 19, 2006.

Decided: Dec. 1, 2006.

See also 882 A.2d 1133.

Stephen D. Ellis, Timothy I. Mahon, Ellis & Boxer, Springfield, VT, for Plaintiff-Appellant.

Robert B. Hemley, Craig Weatherly, Gravel and Shea, Burlington, VT, for Defendant-Appellee.

Before MINER, CALABRESI, Circuit Judges, HOLWELL, District Judge.*

HOLWELL, District Judge.

This case returns to us following our certification to the Vermont Supreme Court of certain questions regarding the interpretation and application of a 1999 amendment to section 624(e) of Vermont's workers' compensation law. Vt. Stat. Ann. tit. 21, § 624(e) (2003), *amended by* 1999 Vt. Acts & Resolves 41. Based on the Vermont Supreme Court's answer to the certified questions, we now vacate the judgment entered by the District Court and remand the case for further findings consistent with that answer.

## BACKGROUND

The facts in this case are not disputed. Defendant-appellee John Henry was severely injured in a car accident in December 1999 while driving a truck for his employer, BouyeaFassetts, Inc. ("Best Foods"). As the accident occurred within the scope of his employment, Henry rightfully claimed workers' compensation. Plaintiff-appellant Travelers Insurance Company ("Travelers"), Best Foods' workers' compensation insurer, began paying Henry workers' compensation benefits. Henry also sued Kristy Herrick, the driver of the second car, who was solely responsible for his accident. The suit settled for $100,000, the limit of Herrick's liability insurance. Suits by an injured employee to enforce the liability of a third party such as Herrick are specifically authorized by the Vermont statute. Vt. Stat. Ann. tit.

* The Honorable Richard J. Holwell, of the United States District Court for the Southern District of New York, sitting by designation.

21, § 624(e). However, any recovery must first be applied to reimburse the workers' compensation insurer for any amounts paid to the employee to the date of recovery, with any balance being treated as an advance to the employee of future workers' compensation benefits.[1] *Id.* This entitles the workers' compensation insurer to so-called "first dollar" reimbursement from third-party proceeds. Accordingly, after deducting costs (including attorney's fees), Henry used the third-party insurance proceeds paid by Herrick's insurer to reimburse Travelers for past and future workers' compensation payments. At the time of the accident, Henry maintained a private underinsured motorist ("UIM") insurance policy with Co–Operative Insurance. This first-party insurance policy,[2] worth $100,000, covered Henry if the driver-at-fault maintained inadequate insurance coverage. Additionally, Best Foods, on behalf of Henry and the rest of its workers, maintained a UIM policy with Travelers. This policy was worth $400,000.[3]

## DISCUSSION

### 1. *Henry I*

Travelers filed suit in the United States District Court for the District of Vermont seeking a declaratory judgment that Travelers was entitled to "first dollar" reimbursement from any award made to Henry under his employer-purchased UIM policy, as well as his employee-purchased policy, as further reimbursement for workers' compensation payments made to the date of any award as well as a credit toward any future benefits it might be required to pay. Due to the unusual wording of section 624 prior to 1999, the Vermont Supreme Court had held that a carrier was entitled to reimbursement from the proceeds of a UIM policy that had been purchased by an employer, even though in most contexts a UIM policy is considered a first-party obligation. *Travelers Cos. v. Liberty Mut. Ins. Co.*, 164 Vt. 368, 372–73, 670 A.2d 827, 829–30 (1995). In apparent response to this decision, the Vermont Legislature amended section 624(e) in 1999 to exclude from reimbursement the proceeds of any UIM policy purchased by an employee as well as any other first-party insurance payments. Specifically, the 1999 amendment added the following language:

> Reimbursement required under this subsection, except to prevent double recovery, shall not reduce the employee's recovery of any benefit or payment provided by a plan or policy that was privately purchased by the injured employ-

---

1. Section 624(e) reads in relevant part:

> In an action to enforce the liability of a third party, the injured employee may recover any amount which the employee or the employee's personal representative would be entitled to recover in a civil action. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under this chapter to date of recovery, and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the em-

ployer on account of any future payment of compensation benefits. . . .
Vt. Stat. Ann. tit. 21, § 624(e).

2. "First-party coverage" refers to an insurer's direct promise to pay the insured, as compared to "third-party coverage" where the insurer pays the claim of a third party such as the victim of the insured's negligent operation of a motor vehicle. *See Travelers Ins. Co. v. Henry ("Henry II")*, 178 Vt. 287, 294, 882 A.2d 1133, 1138 (2005).

3. The actual limit of the Travelers UIM policy was $500,000, but because Herrick owned liability insurance worth $100,000, the total underinsured coverage of the Travelers UIM policy was effectively reduced to $400,000.

ee, including uninsured-under insured motorist coverage, or any other first party insurance payments or benefits. 1999 Vt. Acts & Resolves 41 (codified as amended at Vt. Stat. Ann. tit. 21, § 624(e) (2003)).

Before the District Court, Travelers argued that the amendment to section 624(e) did not exempt from reimbursement the UIM policy that had been purchased by Best Foods as this policy had not been "privately purchased by the injured employee." The District Court rejected this "too narrow" reading of the amendment. *Travelers Ins. Co. v. Henry ("Henry I")*, 2003 WL 23273560, at *1 (D.Vt. Nov. 3, 2003), 2003 U.S. Dist. LEXIS 20547. Based on the plain language of the statute, as well as the legislative history of the 1999 amendment, the court concluded that, except as necessary to prevent double recovery, two types of recoveries were exempt from reimbursement: (1) payments from privately purchased plans (including employee-purchased UIM insurance), and (2) payments from any other first-party plan (including employer-purchased UIM insurance). *Id.* at *2.

This left open the question of whether some portion of either the employer-purchased or employee-purchased UIM policies should be recoverable by Travelers in order "to prevent double recovery," a limitation on the exemption explicitly provided for in the statute. Vt. Stat. Ann. tit. 21, § 624(e). Determination of this question turns on the meaning given to the term "double recovery." As the leading treatise on workers' compensation law points out, the term can have two meanings. 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 110.05[8], at 110–23 (2006) [hereinafter Larson's]. It can mean recovering from two sources, here workers' compensation and UIM proceeds, in a combined amount that is greater than the employee's total actual damages (hereinafter "actual double recovery"). *See id.* Assume, for example, that an injured employee's total damages, both economic and noneconomic, are $100 and he receives $70 from workers' compensation and $40 from his UIM insurer. All would agree that the employee has received an actual double recovery of $10. The term "double recovery," however, has also been used to mean recovering insurance proceeds from two sources regardless of whether the combined amount exceeds an employee's total damages (hereinafter "double source recovery"). *See id.* Assume again that an employee's total damages are $100 and that he receives $70 in workers' compensation payments and $40 from his UIM insurer. Under the alternate definition of double recovery, having received funds from two sources, he would be required to reimburse the workers' compensation insurer the entire $40. The result of applying different definitions of double recovery has a striking impact on the employee's recovery. In the first example he recovers his total actual damages of $100, while in the second example his recovery is 70% of his total damages, or $70.

While at first blush the second result may seem inequitable, double source recovery has generally been applied to any recovery by an employee of damages in a tort action against a negligent *third party*. In this paradigm, the workers' compensation insurer is subrogated to the rights of the employee and, thereby, is entitled to "first dollar" reimbursement out of any damage award paid by the tortfeasor. As Professor Larson points out, however, the insurer's subrogation rights in actions against responsible third parties are premised on the assumption that the third party will be liable for all the employee's losses, and allowing the employee to keep both his

workers' compensation and his tort award would result in actual double recovery. *See id.* Therefore, it is equitable to permit the workers' compensation carrier to obtain "first dollar" reimbursement from a third-party recovery as the employee, in theory, is still made whole. *Id.*[4]

This result is far from certain where the employee's second source of recovery is not a third-party action but rather the proceeds of a UIM policy, which, because of low policy limits, is typically far below the employee's actual total loss. *Id.* Requiring "first dollar" reimbursement from UIM proceeds, then, will generally result in the employee not being made whole. Indeed, in the example set forth above, the application of "first dollar" reimbursement to the proceeds of the UIM policy results in the employee recovering only 70% of his actual total losses.

Predictably, Travelers and Henry chose different definitions of double recovery in presenting their arguments to the District Court. The parties previously stipulated that Henry's "total damages" were $500,000 (total Co–Operative UIM coverage and total Travelers UIM coverage) *plus* any workers' compensation already paid by Travelers. Thus, Henry's total damages were necessarily greater than his workers' compensation recovery. Travelers, however, argued that Henry's total damages were irrelevant and, as he indis-

putably received compensation from two sources, workers' compensation and the UIM policies, he had enjoyed double recovery in contravention of section 624(e). Therefore, Travelers concluded, it was entitled to "first dollar" reimbursement from both of Henry's UIM policies. Henry countered that double recovery meant the recovery of more than his actual total damages and because, under the stipulation, his recoveries from workers' compensation and the UIM policies were equal to his actual damages there could be no prohibited double recovery. The District Court did not explicitly consider which definition of double recovery to apply. Nevertheless, based on its prior rulings and the subsequent entry of judgment for Henry, it is clear that the court read section 624(e) to permit reimbursement from UIM policies only where there has been an actual double recovery in excess of an employee's total damages.

### 2. *Henry II*

The judgment against Travelers in *Henry I* was appealed to this Court. At the parties' request, we certified to the Vermont Supreme Court the question of whether section 624(e), as amended, was intended to exclude from reimbursement UIM policies purchased by employers as well as UIM policies purchased directly by an employee.[5] The parties did not request

---

4. The Vermont Supreme Court has commented on the fairness of "first dollar" reimbursement from a third-party damage award:

   [T]he insurance carrier, representing the employer, comes out even, being without fault or injury; the third party wrongdoer pays exactly the damages he would have paid without any workers' compensation law; ... and the employee—in addition to what he has already received in compensation benefits—is entitled to the remainder.

   *St. Paul Fire & Marine Ins. Co. v. Surdam,* 156 Vt. 585, 590, 595 A.2d 264, 266 (1991) (quot-

ing *LaBombard v. Peck Lumber Co.,* 141 Vt. 619, 624, 451 A.2d 1093, 1096 (1982)).

5. The following questions were certified by this Court's unpublished May 14, 2004 Order: "(1) What effect, if any, does the 1999 amendment to [Vt. Stat. Ann. tit. 21, § 624(e) ] have [on] a workers' compensation carrier's right to obtain reimbursement from an injured worker's recovery of proceeds under an underinsured/uninsured insurance policy that was not 'privately purchased by the injured employee'?" and "(2) What effect, if any, does the 1999 amendment to [Vt. Stat.

certification as to the proper interpretation of "double recovery," perhaps because that issue was already pending before the Vermont Supreme Court as a result of certification of that question by this Court in another workers' compensation case. *See Travelers Ins. Co. v. Carpenter ("Carpenter I")*, 313 F.3d 97 (2d Cir.2002). In that case, the district court (again, Murtha, *J.*) decided that double recovery could only be determined "in light of [Carpenter's] total award of damages," thus interpreting section 624(e) to require reimbursement only where the employee's total recovery exceeded total actual damages. On appeal from the district court's subsequent dismissal of Travelers' claim against Carpenter, we certified to the Vermont Supreme Court the following question, among others: "[H]ow is the prohibition on 'double recovery' in § 624(e) defined and, if relevant, how are an injured worker's 'total damages' determined?" *Id.* at 109. The Vermont Supreme Court initially accepted the certification proceeding, but it later dismissed the acceptance as improvidently granted. *See Travelers Ins. Co. v. Carpenter ("Carpenter II")*, 411 F.3d 323, 327 (2d Cir.2005) (discussing *Travelers Ins. Co. v. Carpenter*, 177 Vt. 651, 858 A.2d 702 (2004) (unpublished order)). Consequently, this Court undertook to determine the meaning of "double recovery" and concluded, as had the district court, that the term refers to any recovery in excess of total damages sustained. *See Carpenter II*, 411 F.3d at 333–38. Put another way, "the amended statute exempts UIM insurance proceeds from first dollar reimbursement [to the workers' compensation insurer] except to the extent that those proceeds compensate an injured worker for more than the maximum recoverable loss that the worker has sustained." *Id.* at 337. Thus we interpreted section 624(e) to limit reimbursement to cases of actual double recovery and rejected Travelers' contention that the statute required reimbursement in all cases of double source recovery. *See id.*

■ On June 24, 2005, four days after we issued *Carpenter II,* the Vermont Supreme Court issued its opinion in response to the questions previously certified by the Court in this appeal, which addresses whether the general exemption from reimbursement created by the 1999 amendment to section 624(e) extends to employer-purchased UIM policies in addition to employee-purchased policies. *See Travelers Ins. Co. v. Henry ("Henry II")*, 178 Vt. 287, 882 A.2d 1133 (2005). Slightly reformulating the certified questions, the Vermont Supreme Court held that, except to prevent a double recovery, the plain language of the 1999 amendment to section 624(e) excluded from reimbursement the proceeds of UIM policies, whether purchased by an employee or an employer. *See id.* at 289 & n. 1, 882 A.2d at 1135 & n. 1. Specifically, the court concluded that the clause excluding reimbursement for employee-purchased UIM coverage "or any other first party insurance payments or benefits" was clearly intended to exempt proceeds from UIM policies purchased by the employer inasmuch as such policies provide direct, first-party payments to the insured employee. *See id.* at 293–94, 882 A.2d at 1138–39.

### 3. Double Recovery Revisited

■ Having thus responded to the certified questions, the Vermont Supreme

Ann. tit. 21, § 624(e)] have on a workers' compensation carrier's right to a credit against future benefits from an injured worker's recovery of proceeds under an underinsured/uninsured insurance policy that was not 'privately purchased by the injured employee'?" *See* Corrected Order, May 14, 2004 (certifying questions to Vermont Supreme Court).

Court proceeded to address the meaning of the phrase "except to prevent double recovery," the precise question that this Court had just addressed in *Carpenter II*. Apparently without having had the opportunity to consider this Court's interpretation of section 624(e) in *Carpenter II*, the *Henry II* court undertook its own reading of the statute, which differs, at least in application, from the reading adopted in *Carpenter II*. Because federal courts must follow the holdings of the highest state court in applying state law, *see Levin v. Tiber Holding Corp.*, 277 F.3d 243, 253 (2d Cir.2002), the discussion in *Henry II* supersedes *Carpenter II* as controlling precedent. It is worth noting, however, that on one important point, *Henry II* and *Carpenter II* do not differ: Both courts rejected Travelers' assertion that the statutory prohibition on double recovery meant that a workers' compensation insurer is entitled to "first dollar" reimbursement from the injured employee's UIM recoveries. *See Carpenter II*, 411 F.3d at 335 ("Travelers' proposed reading would render the [1999 amendment] of § 624(e), if not a nullity, at best a strangely worded restatement of the [pre-amendment] rule."); *Henry II*, 178 Vt. at 297, 882 A.2d at 1140 ("We reject Travelers' interpretation because it would render the 1999 amendment a nullity."). Thus the Vermont Supreme Court declined to adopt the second definition of double recovery identified by Larson—double source recovery—which would result in a "first dollar" reimbursement whether or not the aggregate recovery exceeds actual damages. 6 Larson's § 110.05[8], at 110–23. The Vermont Supreme Court reasoned—as did this Court in *Carpenter II*, 411 F.3d at 337—that this interpretation of double recovery would contravene the intent of the Vermont Legislature to "protect an employee's UIM recovery from a workers' compensation carrier's right to 'first dollar' reimbursement." *Henry II*, 178 Vt. at 297, 882 A.2d at 1141.

At this point, however, the opinions in *Henry II* and *Carpenter II* part company. The *Carpenter II* court construed double recovery to mean, simply, any recovery by an employee that exceeds his total damages, i.e., actual double recovery. *Carpenter II*, 411 F.3d 337–38. But the Vermont Supreme Court in *Henry II* adopted a two-step approach to reimbursement that may not always reach precisely the same result.[6] Drawing on the distinction previously recognized in *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991), *Henry II* instructs a trial court (or the settling parties) first to apportion any recovery under a UIM policy between economic and noneconomic damages. *Henry II*, 178 Vt. at 297–98, 882 A.2d at 1141. This apportionment of the UIM award should "reasonably reflect[ ] the injured party's actual economic and noneconomic losses." *Id.* at 299, 882 A.2d at 1142. Because workers' compensation compensates employees only for economic losses (lost wages, medical expenses, and the like), *id.* at 298–299, 882 A.2d at 1142, there "is no danger of a double recovery" with regard to the noneconomic portion of the UIM award (such as pain and suffering), and, therefore, "the insurer is not entitled to reimbursement from this portion of the [UIM] award." *Id.* at 299, 882 A.2d at 1142.

This leaves the question of whether and to what extent the workers' compensation insurer is entitled to reimbursement from the economic portion of the UIM award. On this question the Vermont Supreme Court concluded:

6. *See infra* note 8 (providing example).

If the employee recovers such [economic] damages and has already been compensated for these losses by the [workers' compensation] insurer, the insurer is entitled to reimbursement to prevent a double recovery.

*Id.* This language allows for some ambiguity. Is the court saying that any award of economic damages from a UIM policy is subject to reimbursement because the employee "has already been compensated [in part] for these losses"? Or is the court saying that reimbursement is appropriate only where the employee "has already been compensated [in whole] for these losses"?

Travelers contends that this passage entitles it to reimbursement whenever an employee such as Henry has recovered *any* economic damages under a UIM policy, regardless of whether the combined amount of recovery (workers' compensation and the economic portion of a UIM award) exceeds the employee's actual economic damages. To see how this would operate, assume that an employee has total economic damages of $100, has received $70 as workers' compensation, and thereafter receives $100 from his UIM carrier that the trial court apportions, $50 for economic damages and $50 for noneconomic damages. Applying Travelers' definition of double recovery, the entire $50 in economic damages received under the UIM policy is paid to Travelers, even though the employee will have recovered only 70% of his actual economic damages. It can be seen, then, that this interpretation of double recovery—referring to double source recovery—results in "first dollar" reimbursement from the economic damages portion of any UIM award.

We accept that this is one possible interpretation of the solution to the double recovery problem achieved by the court in *Henry II.* However, reading the opinion in its entirety, we are persuaded that the Vermont Supreme Court intended to permit reimbursement from the economic portion of a UIM award only to the extent necessary to prevent an *actual* double recovery, that is, a recovery of more than 100% of an employee's actual economic damages. Applying this meaning of double recovery to the example at hand, the employee's receipt of $70 in workers' compensation and $50 from the economic damages portion of his UIM award, results in a recovery of $120, or $20 more than his actual economic damages. Therefore, $20 would be reimbursed to the carrier to avoid a double recovery and the employee would be made whole. A contrary reading of *Henry II*—reading double recovery to mean double source recovery—would necessarily result in a "first dollar" reimbursement scheme for those damages. But this would seem directly contrary to the critical conclusion in *Henry II* that the 1999 amendment to section 624(e) was intended to "protect an employee's UIM recovery from a workers' compensation carrier's right to 'first dollar' reimbursement." *Id.* at 297, 882 A.2d at 1141; *see also Feeley v. Allstate Ins. Co.*, 178 Vt. 642, 646, 882 A.2d 1230, 1235 (2005) (noting that Vermont workers' compensation carrier may reach UIM proceeds "only to the extent that doing so prevents double recovery").[7] It would be a curious reading of *Henry II* to conclude that the court therein endorsed the very evil that the legislature sought to avoid. *See Henry II*, 178 Vt. at 293, 882 A.2d at 1138.

7. Travelers' reading is also inconsistent with the Vermont Supreme Court's conclusion that Henry has a "direct right to claim UIM benefits ... [conferring] first-party status to him respecting such benefits," and further that

"[t]he Legislature amended the statute to specifically exclude 'first party insurance payments or benefits' from the carrier's right to first-dollar reimbursement." *Henry II*, 178 Vt. at 294, 882 A.2d at 1138.

Moreover, it appears that the court in *Henry II* applied the concept of actual double recovery in excluding the entire portion of a UIM award that is apportioned to noneconomic damages. *See id.* at 299, 882 A.2d at 1142 ("Because workers' compensation does not compensate an employee for [noneconomic] losses, there is no danger of a double recovery, and the issuer is not entitled to a reimbursement from this portion of the employee's award."). Having thus rejected double source recovery as a basis for reimbursement of noneconomic damages, it would seem inconsistent with the court's reasoning to then apply this concept to economic damages by requiring "first dollar" reimbursement regardless of whether the employee's actual economic recovery exceeds his actual economic losses. There is indeed a "danger" that this would be so, but that danger is addressed in a coherent fashion by requiring reimbursement only to the extent that actual double recovery of economic damages is established.

Travelers points to two out-of-state decisions cited in *Henry II* to support its view that the Vermont Supreme Court intended to permit "first dollar" recovery of that portion of a UIM award apportioned to economic damages. *See id.* (citing *Colo. Comp. Ins. Auth. v. Jorgensen,* 992 P.2d 1156, 1166 (Colo.2000) (en banc), and *Dearing v. Perry,* 499 N.E.2d 268, 272 (Ind.Ct. App.1986)). However, neither case addresses the issue of double recovery, and both cases are cited solely for the proposition that the apportionment of settlements between economic and noneconomic losses must be fair and reasonable. Nor can Travelers find support for its reading of *Henry II* in the court's observation that section 624(e) ideally operates "to provide a fair result" in that

[t]he insurance carrier, representing the employer, comes out even, being without

fault or injury; the third party wrongdoer pays exactly the damages he would have paid without any workers' compensation law; ... and the employee—in addition to what he has already received in compensation benefits—is entitled to the remainder.

*Id.* at 291–92, 882 A.2d at 1136–37 (quoting *Surdam,* 156 Vt. at 590, 595 A.2d at 266). By its terms, this passage is a reference to reimbursement from the judgment or settlement of a third-party action against a tortfeasor. Section 624(e) explicitly provides for "first dollar" reimbursement from such third-party recoveries, a logical result as it is based on the assumption, noted above, that "typically the third-party recovery will cover all of plaintiff's loss, and that therefore to retain the tort recovery and compensation would result in double recovery." 6 Larson's § 110.05[8], at 110–23. Just as clearly, however, section 624(e) was amended in 1999 specifically to exempt UIM awards from "first dollar" recovery and to limit reimbursement to the extent necessary to avoid double recovery.

The Vermont Supreme Court has, in our view, achieved that goal by adopting a calibrated, two-step procedure. First, a UIM award is apportioned fairly and reasonably between noneconomic and economic damages. The noneconomic portion of the award is necessarily excluded from reimbursement as there can be no possibility of double recovery. As a second step, however, the economic portion of the UIM award must be added to the benefits received under workers' compensation to determine whether the combined amount exceeds the employee's total economic damages. To the extent it does, the insurer must be reimbursed that amount to prevent double recovery. This is a somewhat more refined approach than the one

we adopted in *Carpenter II*,[8] but this approach is based on an essentially identical reading of the language and legislative history of the 1999 amendment of section 624(e).

## CONCLUSION

For the reasons set forth above, the judgment of the District Court is hereby VACATED and the case is REMANDED for further proceedings consistent with this opinion.

8. An example of the differing results under both approaches may be useful. Assume that an employee's total damages are $100, $80 of which are economic and $20 of which are noneconomic. Further assume that the employee has received $60 from workers' compensation and $40 under a UIM policy. Adopting the "total damages" approach in *Carpenter II* results in $0 reimbursement as total damages equal the total award. However, this result masks an actual double recovery that is revealed by the approach taken in *Henry II*. After apportionment of the UIM award ($32 economic damages, $8 noneconomic damages based on an 80:20 ratio), it can be seen that the employee has received $92 in economic benefits or $12 more than his actual economic damages. Under *Henry II*, this amount must be reimbursed to the workers' compensation insurer.