944 A.2d 891 (2007)
2007 VT 121
Richard HUBBARD and Dianne Hubbard, Individually and as Administrators of the Estate of Seth Hubbard
v.
METROPOLITAN PROPERTY AND CASUALTY INSURANCE CO. and Concord General Mutual Insurance Co.
No. 06-252.
Supreme Court of Vermont.
November 2, 2007.
*892 John A. Serafino of Ryan Smith & Carbine, Ltd., Rutland, for Plaintiffs-Appellants.
Joel P. Iannuzzi of Cleary Shahi & Aicher, P.C., Rutland, for Defendent-Appellee Metropolitan Property and Casualty Insurance Co.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
BURGESS, J.
¶ 1. Plaintiffs Richard and Dianne Hubbard, on behalf of themselves and the estate of their child, Seth, appeal the superior court's summary judgment in favor of their auto insurance carrier, Metropolitan Property and Casualty Company. Seth died while a passenger in a car driven by another boy who lost control and crashed in a single-car accident. After the accident, plaintiffs claimed uninsured/underinsured motorist (UM/UIM) coverage for Seth under their Metropolitan insurance policies. Metropolitan denied plaintiffs' claim in part, arguing that its obligation to pay UM/UIM benefits for plaintiffs' loss should be reduced by the driver's liability insurance payments already paid to plaintiffs by the driver's insurance carrier, Concord Mutual Insurance Company.
¶ 2. Relying on an "owned-vehicle exclusion" in the driver's UM/UIM insurance policy written to prevent an insured from claiming UM/UIM coverage for an injury sustained in a car already covered by liability insurance in the same policy, the court determined that Concord's UM/UIM coverage did not apply to a passenger. Plaintiffs contend the court erred in not invalidating this exclusion as: (1) at odds with this Court's precedent invalidating what plaintiffs characterize as a similar exclusion, and as (2) defeating the compensatory purpose behind statutorily mandated UM/UIM insurance. We disagree and affirm the superior court's decision to enforce the owned-vehicle exclusion.
¶ 3. The accident triggered three insurance policies. First, the driver was insured through his parents' policy purchased from Concord. The Concord policy provided $100,000 in liability insurance and $100,000 in UM/UIM insurance. Concord's UM/UIM policy excluded coverage for an owned vehicle insured for liability under the same policy, stating that the $100,000 UM/UIM coverage would not cover damages claimed against the operator of any vehicle "owned by or furnished for the regular use of" a named insured or family member. Plaintiffs also each had individual auto insurance policies through Metropolitan Insurance, under which their son was covered, with each policy providing $100,000 in UM/UIM coverage.
¶ 4. It is undisputed that damages arising from Seth's death and plaintiffs' loss exceed the available liability and UM/UIM coverage provided by the three policies. After the accident, Concord paid $100,000 to plaintiffs in settlement. Left in dispute is the amount owed plaintiffs under both the Concord and Metropolitan UM/UIM policies. On cross-motions for *893 summary judgment before the trial court, plaintiffs contended that all of the UM/UIM coverages were payable as follows: $100,000 UM/UIM from Concord offset by the $100,000 Concord liability payment,[1] which would then leave $200,000 UM/UIM coverage due from the Metropolitan policies. Metropolitan countered that the driver's insurance contract with Concord expressly excluded UM/UIM coverage for injuries sustained in a vehicle owned by the insured that, like the car involved in this accident, was insured for liability under the same contract. Thus, according to Metropolitan's construction, there was no Concord UM/UIM coverage for this accident, so that Metropolitan's obligation to pay $200,000 in UM/UIM insurance should be offset by Concord's $100,000 settlement payment. This would leave Metropolitan responsible to pay plaintiffs $100,000, rather than $200,000, under their UM/UIM policies.
¶ 5. Plaintiffs agree that the plain language of the Concord policy would exclude UM/UIM coverage for this accident. Plaintiffs argued below, however, that the exclusion is unenforceable as contrary to Vermont's statute mandating UM/UIM insurance. See 23 V.S.A. § 941(a) (requiring Vermont motor-vehicle insurers to include coverage for damages caused by uninsured or underinsured vehicles). The trial court disagreed, concluding that the owned-vehicle exclusion was not inconsistent with the statute, and granted summary judgment to Metropolitan while denying plaintiffs' motion for same.
¶ 6. Summary judgment is appropriate when the material facts are not in contest and the moving party is entitled to judgment as a matter of law. Searles v. Agency of Transp., 171 Vt. 562, 562, 762 A.2d 812, 813 (2000) (mem.). This dispute turns purely on an issue of law, so our review is nondeferential and plenary. Id. Resolution of the matter requires some background in Vermont law and policy on UM/UIM insurance.

I.
¶ 7. Vermont requires all insurers offering motor-vehicle-liability insurance policies to include coverage "for the protection of persons insured . . . from owners or operators of uninsured, underinsured or hit-and-run motor vehicles." 23 V.S.A. § 941(a). The "overriding purpose" of this UM/UIM requirement is to "protect[ ] the insured from the misfortune of being involved in an accident with a financially irresponsible driver." Feeley v. Allstate Ins. Co., 2005 VT 87, ¶ 9, 178 Vt. 642, 882 A.2d 1230 (mem.). By purchasing UM/UIM coverage, an insured ensures that, in the case of an accident with an uninsured or underinsured tortfeasor, his UM/UIM policy will fill the "gap" between the tortfeasor's available liability insurance and the UM/UIM protection purchased by the insured. Id. ¶ 8.
¶ 8. To serve this gap-filling purpose, the availability and extent of an UM/UIM award in the case of an accident with an underinsured tortfeasor is assessed relative to the liability limits of that tortfeasor. As defined in 23 V.S.A. § 941(f), a motor vehicle is underinsured "to the extent that its personal injury limits of liability at the time of an accident are less than the limits of uninsured motorist coverage applicable to any injured party legally entitled *894 to recover damages under said uninsured motorist coverage."[2] We discussed this provision in Feeley, stating that § 941
defines when a driver is underinsured by comparing the tortfeasor's liability limits with the limits of the insured's UIM coverage. If the insured purchased UIM coverage greater than the limits of liability in the tortfeasor's policy, the tortfeasor is underinsured within the meaning of § 941. This type of gap coverage places the insured in the same position as if, at the time of the accident, the tortfeasor had liability coverage equal to the insured's UIM coverage.
2005 VT 87, ¶ 8, 178 Vt. 642, 882 A.2d 1230 (citations and quotations omitted).
¶ 9. Thus, if an insured with $200,000 in UM/UIM coverage under his own policy is injured by a driver carrying no insurance, the insured will be entitled to $200,000 from his own insurance carrier. If that same insured is injured by a driver carrying $100,000 in liability coverage, the insured will be entitled to $100,000 from the other driver and $100,000 in UM/UIM coverage from his own carrier. The $100,000 of liability coverage that was available from the other driver is set off against the insurer's $200,000 UM/UIM obligation. Finally, if the insured is injured by a driver carrying $200,000 in liability coverage, the insured will not be entitled to recover under his own UM/UIM policy, as there is no "gap" to fill. Accordingly, UM/UIM policies are not intended by the statute to increase the overall amount of recovery, but to restore the insured to the position he would have been in had the other driver carried equally responsible insurance coverage. Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 14, 175 Vt. 61, 819 A.2d 727.
¶ 10. While UM/UIM coverage arises in the context of automobile insurance, it is in essence self-insurance. By purchasing the mandated UM/UIM coverage, the insured is guaranteed at least that amount of recovery regardless of a lower level of liability insurance purchased by a tortfeasor. In that sense, the UM/UIM insurance attaches to the policy holder who purchases it, unlike liability coverage, which attaches to the vehicle insured. See Monteith v. Jefferson Ins. Co. of N.Y., 159 Vt. 378, 381, 618 A.2d 488, 490 (1992) (holding that UM/UIM coverage attaches to the insured, not to the insured vehicle, protecting the insured person regardless of whether the insured was driving or riding in a motor vehicle, or happened to be in his living room or was a pedestrian).

II.
¶ 11. Vermont's UM/UIM statute limits the restrictions that insurance companies may place on the availability of UM/UIM coverage. For example, in Monteith, we invalidated an insurer's effort to limit its UM/UIM coverage with a clause in its contract barring an insured from aggregating, or "stacking," the UM/UIM coverage otherwise available under separate policies insuring the insured's other vehicles. 159 Vt. at 387, 618 A.2d at 493. The plaintiff in Monteith had purchased $100,000 in UM/UIM coverage from one company insuring his motorcycle, and $300,000 in UM/UIM coverage from another company insuring his automobiles. We read § 941 as mandating protection from financially irresponsible drivers regardless of location, because UM/UIM "`[r]ecovery is not limited to situations involving the motor vehicle of the insured[,] . . . the language of § 941 extends coverage to insured persons wherever *895 they may be, provided that they are injured by an uninsured motorist. . . . No policy can be issued which reduces the amount of coverage mandated by statute.'" Id. at 381, 618 A.2d at 490 (emphasis omitted) (quoting Sanders v. St. Paul Mercury Ins. Co., 148 Vt. 496, 498-99, 536 A.2d 914, 915-16 (1987)). Nevertheless, the automobile insurance policy in Monteith purported to exclude UM/UIM coverage for injuries sustained while in another vehicle owned by the insured, but not insured under the same policy.
¶ 12. We determined that the auto-insurance exclusion prohibiting stacking of separate UM/UIM coverages would impermissibly reduce the UM/UIM coverage required by the statute. Id. at 384-85, 618 A.2d at 491-92. Having held that the auto policy's UM/UIM protection of the insured was "portable and attaches to the insured rather than to the vehicle," it was therefore applicable to the plaintiff's injuries in Monteith. Id. at 384, 618 A.2d at 491. Under Monteith, an insurer's statutory UM/UIM exposure extends to any injury to an insured, whether in or outside of an insured vehicle, caused by the negligence of an underinsured driver. Any exclusion that interferes with filling the gap between the UM/UIM policy purchased by the insured and a tortfeasor's auto-liability insurance is invalid.
¶ 13. Relying primarily on Monteith, plaintiffs maintain that Concord's owned-vehicle exclusion impermissibly conditions its UM/UIM responsibility on what car was involved in the accident. Plaintiffs argue that excluding UM/UIM coverage for injuries sustained while traveling in the same vehicle insured for liability under the same policy is inconsistent with the statutory goal of portability and protection of the insured regardless of location, and subverts the stacking of all available UM/UIM coverage in contravention of Monteith and the mandate of § 941. We disagree with plaintiffs' reading of Monteith.
¶ 14. Any similarity between Concord's owned-vehicle exclusion and the exclusion disallowed in Monteith is facial rather than substantive. While both exceptions appear to limit the availability of coverage based on the location of the plaintiff, the effect of the two provisions is very different. The exclusion in Monteith placed a significant limitation on the plaintiff's UM/UIM protection: the Monteith plaintiff could not recover under his policy if he was not traveling in a vehicle specifically insured by that policy, despite the fact that UM/UIM insurance is legislatively intended to be a portable form of self-insurance against uninsured vehicles in general. In the case at bar, the owned-vehicle exclusion places no restriction at all on plaintiffs' rights to collect UM/UIM benefits under their own UM/UIM contract with Metropolitan. Nor does the owned-vehicle exclusion impermissibly limit Seth's right to UM/UIM benefits from the driver's Concord policy under which Seth, as passenger, was included as an insured. As required by § 941, the Concord policy provided UM/UIM insurance to fill any gap between the insured's $100,000 UM/UIM coverage and any liability insurance available from an underinsured tortfeasor. Having thus satisfied the statutory mandate for gap insurance, Concord's owned-vehicle exclusion meant only that the insured may not recover under both the liability portion and the UM/UIM portion of the same contract.[3] Such an exclusion *896 is not at all inconsistent with the statute where, as here, the driver's liability and the insured passenger's UM/UIM coverages under the same Concord policy are equivalent. Since no gap in coverage can occur, the statute's purpose is neither defeated nor impinged upon by enforcement of the exclusion.[4] The owned-vehicle exclusion thus restricts UM/UIM coverage not because of Seth's location, but because of the availability of the driver's liability coverage for the same injury under that same insurance policy. Allowing plaintiffs to recover under both the driver's liability policy and his UM/UIM coverage for injuries received from that driver would convert the driver's UM/UIM coverage into double liability insurancea result neither intended by the statute, nor, as plaintiffs concede, intended by the parties to the Concord insurance contract.
¶ 15. We note that an overwhelming majority of states have reached the same conclusion we do today as regards the owned-vehicle exclusion to UM/UIM coverage. This issue was recently addressed by the Illinois Court of Appeals in the context of a similar statutory mandate in Mercury Indemnity Co. of Illinois v. Kim, 358 Ill.App.3d 1, 294 Ill.Dec. 191, 830 N.E.2d 603, appeal denied by 217 Ill.2d 567, 300 Ill.Dec. 367, 844 N.E.2d 39 (2005).[5] In that case, the plaintiffs were passengers in a single-car accident, and claimed payments under both the liability and UM/UIM coverage under the driver's policy. The court concluded that an insured-vehicle exclusion that would prevent stacking of liability and UM/UIM coverage within the same policy did not conflict with Illinois' mandatory protection from underinsured drivers as defined by its statute. The court of appeals stated that a number of other "[c]ourts upholding [owned/insured-vehicle] exclusions, or otherwise denying the availability of liability and underinsured motorist coverage under the same policy, have noted that the underlying purpose of underinsured motorist coverage is to protect the insured from the negligent driving of another, underinsured driver, not of the driver with whom he is driving." Id. at 609. Moreover, "[t]hese courts have held that allowing a person to receive benefits under both the liability and underinsured motorist provisions of a single policy would amount to an impermissible rewriting of the policy to increase the liability coverage." Id. at 610. As discussed above, we too decline to rewrite the Concord insurance policy to, in effect, provide $200,000 rather than $100,000 in liability coverage for plaintiffs' son's injuries.
¶ 16. Plaintiffs misplace reliance on Bray v. North Carolina Farm Bureau Mutual Insurance Co. as supporting their proposition that an owned-vehicle exclusion makes UM/UIM coverage impermissibly "vehicle-oriented" rather than "person-oriented." 341 N.C. 678, 462 S.E.2d 650, 653 (1995). Bray had UM/UIM insurance as part of an auto policy for his business *897 that was written to exclude from that coverage any family member "occupying or struck by any vehicle owned by [the insured] that is not a covered auto." Id. at 652 (quotation marks omitted). Bray's wife was driving a vehicle owned by Bray but not insured under the business auto policy when she was struck and injured by an uninsured motorist. While the North Carolina Supreme Court held this exclusion to be invalid, the result turned on North Carolina precedent that its statutory term of a "person insured" for UM/UIM purposes did not recognize an owned-vehicle exclusion as worded in the policy. Id. at 652-53. As Vermont has no such statute or precedent, the result in Bray is inapposite to our reading of Concord's owned-vehicle exclusion here.
¶ 17. The policy goals of § 941 are fully achieved by the summary judgment below. As previously summarized in Colwell, 2003 VT 5, ¶ 14, 175 Vt. 61, 819 A.2d 727, the ultimate purpose of § 941 is to guarantee the $200,000 protection purchased by plaintiffs. After receiving the $100,000 liability payment from Concord and the $100,000 UM/UIM payment from Metropolitan, plaintiffs will be in the same position as if the driver's auto insurance carried the same amount of liability coverage as the UM/UIM coverage purchased by plaintiffs.
Affirmed.
NOTES
[1] Insurers who pay out under UM/UIM policies may offset the UM/UIM benefits they owe by the amount that the victim receives in liability payments from the tortfeasor's policy. See 23 V.S.A. § 941(e) (upon payment under UIM coverage, "the insurer is entitled to the proceeds of any settlement or recovery from any person legally responsible for the damage or personal injury").
[2] Section 941 has since been amended, but the amendment is not relevant to the issues in this appeal. See 2005, No. 9, § 1 (effective May 27, 2005).
[3] Had this accident been caused by another car with inadequate liability coverage, nothing in the exclusion would prevent stacking the Concord UM/UIM coverage along with any other UM/UIM coverages available to the passenger to make up the difference between the insured's aggregate UM/UIM insurance and a tortfeasor's liability insurance.
[4] A different result could obtain if the driver's liability insurance was less than the UM/UIM coverage in the same policy, since the owned-vehicle exclusion would arguably frustrate the statutory purpose by purporting to make the UM/UIM coverage unavailable to fill the gap between the owner's inadequate liability coverage and the UM/UIM protection purchased by the owner for the benefit of the insured passenger.
[5] The Illinois statute provides in relevant part:

[T]he term "underinsured motor vehicle" means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured . . . and for which the sum of the limits of liability under all bodily injury liability insurance policies . . . is less than the limits for underinsured coverage provided the insured. . . .
Id. at 605.