PEDRO ALGUILA *vs.* SAFETY INSURANCE COMPANY.

Middlesex. October 6, 1993. - December 7, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Insurance*, Motor vehicle insurance, Underinsured motorist, Construction of policy. *Statute*, Construction.

A tortfeasor's automobile was not "underinsured" within the meaning of that term in a standard Massachusetts automobile insurance policy prescribed by G. L. c. 175, § 113L (2), and an injured claimant therefore was not entitled to receive underinsurance benefits, where the tortfeasor's stated per person and per accident bodily injury liability limits and the underinsurance limits stated on the claimant's coverage selections page were identical, regardless of the fact that the claimant had collected less than the full per person limit of the tortfeasor's liability coverage due to the exhaustion of the per accident limit of the tortfeasor's policy by multiple claimants. [496-499]

CIVIL ACTION commenced in the Superior Court Department on September 18, 1991.

The case was reported to the Appeals Court by *Wendie I. Gershengorn*, J., on a statement of agreed facts. The Supreme Judicial Court granted a request for direct review.

*G. Gregory Howard* (*Michael Najjar* with him) for the plaintiff.

*Alice Olsen Mann* (*Karyn T. Hicks* & *Denise K. Cahalane* with her) for the defendant.

O'CONNOR, J. This is one of three cases we decide today involving the definition of an "underinsured" automobile in a standard Massachusetts automobile insurance policy prescribed by G. L. c. 175, § 113L(2), as amended by St. 1988, c. 273, § 46. The policy in each case was issued by Safety Insurance Company, the defendant in this case. See *Safety Ins. Co.* v. *Laurent, post* 500 (1993); *Fleurgin* v. *Safety Ins. Co., post* 503 (1993).

The policy provides:

> "Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part, we will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance.
>
> "We will only pay if the injured person is legally entitled to recover from the owner or operator of the underinsured auto. An auto is underinsured when the limits for automobile bodily injury liability insurance covering the owner and operator of the auto are:
>
> "1. Less than the limits shown for this Part on your Coverage Selections Page; and
>
> "2. Not sufficient to pay for damages sustained by the injured person.
>
> "When an auto is underinsured, we will pay any unpaid damages up to the difference between the total amount collected from the automobile bodily injury liability insurance covering the owner and operator of the auto and the limits shown for this Part on your Coverage Selections Page."

We must decide whether a tortfeasor's automobile is underinsured under this policy, and an injured claimant therefore may be entitled to receive underinsurance benefits, where the tortfeasor's stated per person and per accident bodily injury liability limits and the underinsurance limits stated on the claimant's coverage selections page are identical, but the claimant has collected less than the full per person limit of the tortfeasor's liability coverage due to the exhaustion of the per accident limit of the tortfeasor's policy by multiple claimants. We hold that underinsurance benefits are not available to a claimant where the tortfeasor's stated bodily injury liability limits and the claimant's stated underinsurance limits are identical, regardless of whether the claim-

ant's actual recovery from the tortfeasor's insurer has been reduced due to a multiplicity of claimants.

This case was reported to the Appeals Court on the following stipulated facts at the parties' joint request, and we granted direct appellate review. The plaintiff, Pedro Alguila, and five other individuals were injured in an accident involving two automobiles on April 17, 1990. Each injured person, including Alguila, made a bodily injury claim against the responsible person, the tortfeasor. The tortfeasor had in effect an automobile insurance policy with stated bodily injury liability limits of $15,000 per person and $30,000 per accident. The tortfeasor's insurer settled each of the six claims for $5,000, thus exhausting the policy. Alguila then sought underinsurance benefits from his wife's Massachusetts automobile insurance policy, effective from January 22, 1990, to January 22, 1991, issued by Safety. That policy's stated underinsurance limits were $15,000 per person and $30,000 per accident. Alguila claimed that he was entitled to the difference between $15,000, which was his wife's per person underinsurance limit, and the $5,000 he recovered from the tortfeasor's insurer. Safety denied the claim on the ground that the tortfeasor was not underinsured within the meaning of its policy because the tortfeasor's stated bodily injury liability limits and the underinsurance limits stated in Safety's policy were identical.

We reject Alguila's contention that the word "limits" in the Safety policy is ambiguous and may be construed to mean the sum actually collected from the tortfeasor's insurer. The Safety policy is not ambiguous. It expressly distinguishes between the tortfeasor's policy "limits" and "the total amount collected" from the tortfeasor's insurer. It clearly states that a tortfeasor's automobile is underinsured when (1) the liability limits of the policy covering that automobile are less than the underinsurance limits stated in Safety's policy, and (2) the tortfeasor's liability limits are insufficient to pay for the claimant's bodily injury damages. The policy explicitly provides that a determination whether a tortfeasor's automobile is underinsured requires a comparison of the

claimant's and tortfeasor's limits, not of the claimant's limits and the claimant's actual recovery from the tortfeasor's insurer. The policy further states that Safety will pay a claimant the difference between the amount the claimant collects from the tortfeasor's insurer and the underinsurance limits of Safety's policy only "[w]hen an auto is underinsured," that is, when the tortfeasor's liability limits are less than the underinsurance limits, *and* the tortfeasor's liability limits are insufficient to pay for the claimant's bodily injury damages. Thus, the question of the amount actually received from the tortfeasor becomes relevant only after a determination is made that a tortfeasor's automobile is underinsured. Nothing in Safety's policy suggests that Safety will pay even when the tortfeasor's automobile is not underinsured within the policy's definition of that word, or that the question whether the tortfeasor's automobile is underinsured is influenced in any way by the amount of money the claimant may actually realize from the tortfeasor's insurer.

Since the Safety policy is unambiguous, "[w]e must construe the words of the policy according to 'the fair meaning of the language used, as applied to the subject matter,' *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984), quoting *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971), as long as the statutory language or legislative policy of G. L. c. 175, § 113L, is not contravened. *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453-454 (1985), and cases cited." *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 40 (1986). Our construction of the explicit terms of the insurance policy in this case does not contravene the language or legislative policy of G. L. c. 175, § 113L.

General Laws c. 175, § 113L(1), provides that "[n]o policy shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . unless such policy provides coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury, sickness or disease, including death resulting

therefrom. . . ." Section 113L(2) provides that "[f]or the purpose of said coverage, if the policyholder . . . elects to purchase the coverage described in this paragraph, the term 'uninsured motor vehicle' shall also include protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles . . . to which a bodily injury liability bond or policy applies at the time of the accident and *its bodily injury liability bond amount or policy limit is less than the policy limit for uninsured motor vehicle coverage* and is insufficient to satisfy the damages of persons insured thereunder and only to the extent that the uninsured motor vehicle coverage limits exceed said limits of bodily injury liability subject to the terms of the policy" (emphasis added). Thus, G. L. c. 175, § 113L(2), requires insurers issuing automobile policies in this Commonwealth to make underinsured coverage available for the protection of persons insured thereunder who are legally entitled to recover damages for bodily injury from the owners or operators of vehicles that are insured, but not sufficiently so. General Laws c. 175, § 113L(2), defines an underinsured vehicle as a vehicle covered by liability insurance with a limit that is less than the underinsurance limit of the policy on which the claimant relies. Thus, both the statute and Safety's policy require a comparison of the tortfeasor's bodily injury liability limits and the injured person's underinsurance limits, not of the amount collected by the injured person and the injured person's underinsurance limits, to determine whether the tortfeasor's automobile is underinsured and underinsurance benefits are therefore available. There is no conflict between our construction of Safety's policy and the language of G. L. c. 175, § 113L.

Furthermore, there is no conflict between our construction of Safety's policy and the legislative policy behind § 113L. The legislative intent in enacting G. L. c. 175, § 113L, was "to ensure the availability of coverage to compensate, at least in part, an injured insured for his or her injuries caused by an underinsured motorist." *Allstate Ins. Co.* v. *Bearce*, 412 Mass. 442, 448 (1992). However, the enactment of St. 1988,

c. 273, § 46, amending G. L. c. 175, § 113L(2), pursuant to which Safety's standard policy was issued, was also part of a legislative effort "to lower the cost of automobile insurance premiums." *Massachusetts Auto Body Ass'n* v. *Commissioner of Ins.*, 409 Mass. 770, 772 (1991). See St. 1988, c. 273, § 1, noting the Legislature's expectation that automobile insurance rates after the 1988 amendments would reflect savings attributable, among other things, to "making underinsured coverage optional" and to "changing the 'trigger' for underinsurance coverage."

Alguila observed in oral argument that he would have collected more money if the tortfeasor had been uninsured (rather than underinsured) because then he would have been entitled to $15,000 from Safety. As it is, Alguila has received only $5,000 from the tortfeasor's insurer and nothing from Safety. He argues that the Legislature could not have intended that a claimant who was injured by an uninsured automobile would be better off than one who was injured by an underinsured vehicle. However, the statute and the policy prescribed by it and issued by Safety are clear. Any change must come from the Legislature. See *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 547 (1976) ("It is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation").

We remand this case to the Superior Court for the entry of a declaratory judgment that Safety is not liable to Alguila for underinsurance benefits.

*So ordered.*