BRUCE NICHOLS & others[1] *vs.* AETNA CASUALTY &
SURETY COMPANY.

No. 94-P-190.

Plymouth. January 20, 1995. - April 26, 1995.

Present: WARNER, C.J., PERRETTA, & DREBEN, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist, Construction
of policy.

Under the express terms of coverage in an excess personal liability insur-
ance policy, the full limit of underinsurance coverage was available to
pay damages for injuries received by an insured in an automobile acci-
dent, where the tortfeasor's bodily injury liability coverage was less
than the insured's combined underinsurance coverage under a primary
policy and the excess policy. [459-461]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 2, 1992.

The case was heard by *Suzanne DelVecchio,* J., on mo-
tions for summary judgment.

*D. Michael Arter* for the defendant.
*Charles J. Hayes,* for the plaintiffs, submitted a brief.

WARNER, C.J. The defendant, Aetna Casualty & Surety
Company (Aetna), appeals from a judgment in the amount
of $25,000 entered pursuant to the allowance of the plain-
tiffs' motion for summary judgment in a declaratory judg-
ment action seeking underinsured motorists ("UIM") bene-
fits under an excess personal liability policy (excess policy).
The defendant also appeals from the denial of its cross mo-
tion for summary judgment. We affirm.

Brett Nichols, the minor son of Bruce and Ann Nichols,
was injured in a motor vehicle accident on September 14,
1989, by a tortfeasor who had $10,000 of bodily injury liabil-

---

[1]Ann Nichols and Brett Nichols.

ity insurance. The tortfeasor's insurer paid the plaintiffs $10,000. Alleging that Brett's damages were in excess of $35,000, the plaintiffs brought a declaratory judgment action seeking a declaration that the entire $25,000 UIM coverage of an excess policy which they purchased from the defendant is available to cover the damages.[2]

The plaintiffs were not entitled to collect under their primary automobile insurance policy with Aetna (primary policy) which provided UIM coverage of $10,000 on each of the three vehicles in the plaintiffs' household. The language of the primary policy, set forth in the margin,[3] contains the

---

[2] Bruce and Ann Nichols's excess policy with Aetna provides, in pertinent part:

"1. *Coverage*

We will pay compensatory damages for *personal injury* sustained by an *insured* in an *auto* accident for which that *insured* has a legal right to recover from the owner or operator of an uninsured *auto* or an underinsured *auto*. Our responsibility to pay is subject to the terms and conditions of the uninsured or underinsured motorists coverage in your *primary insurance policy.*

We will pay for the amount of loss in excess of the greater of either:
  a. the total amount of insurance any *insured* is entitled to receive under any other uninsured, underinsured motorists or *auto* liability insurance, or
  b. the minimum limit for bodily injury liability required by law in the state in which the accident occurs." (Emphasis original.)

. . .
"The limit of liability shown on the Declarations for this *coverage* is the most we will pay for any one *occurrence*" (emphasis original).

[3] The Aetna primary policy provided:

"An auto is underinsured when the limits for automobile bodily injury liability insurance covering the owner and operator of the auto are:
  1. Less than the limits shown for this Part on your Coverage Selections Page; and
  2. Not sufficient to pay for the damages sustained by the injured person.
When an auto is underinsured, we will pay any unpaid damages up to the difference between the total amount collected from the automobile bodily injury liability insurance covering the owner and oper-

formula for assessing the defendant's liability for UIM coverage. The policy also specifically details to and for whom the insurer will pay damages and the circumstances under which payment will be made.[4] The definition of UIM provided by the primary policy comports with the statutory definition of an underinsured motor vehicle as set forth in G. L. c. 175, § 113L(2).[5]

1. *UIM coverage under the primary policy.* In this case, the tortfeasor had $10,000 bodily injury liability insurance, and the plaintiffs had $10,000 UIM coverage under their primary policy. The UIM provisions of the plaintiffs' policy were, therefore, inapplicable since the tortfeasor's $10,000 bodily injury coverage was not less than the plaintiff's $10,000 UIM coverage. *Alguila* v. *Safety Ins. Co.*, 416

---

ator of the auto and the limits shown for this Part on your Coverage Selections Page.

. . .

"We will reduce the damages an injured person is entitled to recover by the amount recovered from any legally responsible person. We will pay the balance of damages up to the limits shown for this Part on your Coverage Selections Page."

[4]The insurer will pay damages to or for the insured or certain household members if the insured or household member is injured while occupying his or her own auto or someone else's auto or the insured or household member is injured as a pedestrian.

[5]General Laws c. 175, § 113L(2), as amended by St. 1988, c. 273, § 46, provides:

"[T]he term 'uninsured motor vehicle' shall also include protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles, trailers or semitrailers, to which a bodily injury liability bond or policy applies at the time of the accident and its bodily injury liability bond amount or policy limit is less than the policy limit for uninsured motor vehicle coverage and is insufficient to satisfy the damages of persons insured thereunder and only to the extent that the uninsured motor vehicle coverage limits exceed said limits of bodily injury liability subject to the terms of the policy."

Mass. 494, 496-497 (1993).[6] The tortfeasor was not underinsured within the meaning of the primary policy.[7] *Id.* at 497.

2. *UIM coverage under the excess policy.* The plaintiffs' excess policy conditions the defendant's obligation to pay on the plaintiffs' right to recover from the "owner or operator of an uninsured auto or an underinsured auto." Applying the statutory definition, the tortfeasor's vehicle is deemed to be underinsured if the tortfeasor's bodily injury liability coverage is less than the plaintiffs' underinsurance coverage. See G. L. c. 175, § 113L, *supra* note 5. As the excess policy is a personal liability policy,[8] and not an automobile insurance policy, the tortfeasor's status as an underinsured driver must be determined by comparing the plaintiffs' total underinsurance coverage with the tortfeasor's bodily injury liability

---

[6]In *Alguila* v. *Safety Ins. Co., supra,* the claimant had $15,000 UIM coverage, and the tortfeasor had bodily injury limits of $15,000 per person and $30,000 per accident. The tortfeasor's insurer settled six claims for $5,000 each, thereby exhausting the policy. The claimant sought to recover $10,000 of his UIM coverage ($15,000 UIM limit offset by the $5,000 recovered from the tortfeasor). The court denied recovery for the claimant holding that the tortfeasor was not underinsured within the meaning of the policy. The claimant's policy provided UIM coverage only when the tortfeasor's liability limits were less than the claimant's UIM limits and the tortfeasor's liability limits were insufficient to pay the claimant's damages. UIM coverage was not dependent upon the claimant's actual recovery. The UIM provisions of the claimant's policy were in accord with G. L. c. 175, § 113L(2), which "defines an underinsured vehicle as a vehicle covered by liability insurance with a limit that is less than the underinsurance limit of the policy on which the claimant relies." *Id.* at 498.

[7]Although recovery under the plaintiffs' primary policy is not at issue in this case, we note that payment under the plaintiffs' UIM coverage could have been denied due to the inapplicability of the UIM provisions and not as a result of offsetting the UIM coverage by the amount received from the tortfeasor ($10,000 UIM less $10,000 from tortfeasor), see *Alguila* v. *Safety Ins. Co., supra,* as both the plaintiffs and the defendant assert. The same result is reached, however, whether the UIM coverage is offset or the UIM provision is inapplicable.

[8]The terms of the excess policy require that the plaintiffs maintain primary insurance policies providing coverage for personal liability and for all automobiles, residences, watercraft and recreational vehicles. The excess policy provides coverage only for the amount of loss after the primary policies are exhausted. Therefore, the excess policy was designed to supplement the plaintiffs' primary policies.

coverage.[9] See *Connolly* v. *Royal Globe Ins. Co.*, 455 A.2d 932, 935 (Me. 1983) (stacking injured party's UIM coverage provided by two policies and comparing combined UIM coverage with tortfeasor's coverage to determine tortfeasor's status as underinsured). Accordingly, the tortfeasor in this case is underinsured since the tortfeasor's $10,000 bodily injury liability insurance is less than the plaintiffs' $35,000 underinsurance coverage ($25,000 under the excess policy and $10,000 under the primary policy). The plaintiffs, therefore, have a right to recover under the underinsurance provisions of the excess policy.

The defendant claims that the offset provision of the primary policy, which limits the defendant's liability for any "unpaid damages up to the difference between the total amount collected from the automobile bodily injury liability insurance covering the owner and operator of the auto and the [UIM] limits" under the primary policy, is incorporated by reference into the excess policy.[10] As the defendant would have us read the excess policy, the defendant's potential liability would be limited to $15,000 ($25,000 UIM limit of the excess policy less the $10,000 bodily injury liability insurance received from the tortfeasor). The plain language of the excess policy, however, provides that the defendant will pay the amount of the plaintiffs' *loss* (allegedly in excess of $35,000) less the total amount of insurance recovered under any other UIM or automobile liability insurance ($10,000 from the tortfeasor) to the extent of the $25,000 policy limit. See *Ja-*

---

[9]General Laws c. 175, § 113L, specifically prohibits the stacking of underinsurance limits on automobile policies. The plaintiffs acknowledge that stacking the three $10,000 underinsurance policies on the three vehicles in their household for a total of $30,000 in underinsurance is impermissible under the statute. The anti-stacking provisions of the statute, however, are inapplicable in this case since the excess policy is a personal liability policy, and not an automobile insurance policy. *Liberty Mut. Ins. Co.* v. *McLaughlin*, 412 Mass. 492 (1992) (umbrella policy not a motor vehicle liability policy for purposes of G. L. c. 175, § 113L).

[10]The excess policy provides that the defendant's "responsibility to pay is *subject to the terms and conditions of* the uninsured or underinsured motorists coverage in [the plaintiffs'] primary insurance policy" (emphasis supplied).

*cobs* v. *United States Fid. & Guar. Co.*, 417 Mass. 75, 77 (1994), quoting from *Hanover Ins. Co.* v. *Ramsey*, 405 Mass. 1101, 1101 (1989) ("[W]here the words of an insurance contract are 'plain and free from ambiguity they must be construed in their usual and ordinary sense' "). In any event, the primary policy contains a similar provision which requires reducing the plaintiffs' damages by "the amount recovered from any legally responsible person." Both provisions result in the defendant's potential liability of $25,000 under the excess policy. We conclude that the defendant's liability under the excess policy is determined by the express terms of the excess policy's coverage provision and that the offset provision of the primary policy is inapplicable.

3. *Conclusion.* The judgment of the Superior Court for the plaintiffs against the defendant in the amount of $25,000 is vacated.[11] A new judgment should be entered declaring that the defendant is potentially liable for the entire $25,000 UIM coverage limit under the excess policy, but that a determination of the defendant's liability will depend upon the plaintiffs' proof of actual damages.

*So ordered.*

---

[11]Under G. L. c. 231A, a judge is required to make a declaration of the rights of the parties. *Boston* v. *Massachusetts Bay Transp. Authy.*, 373 Mass. 819, 829 (1977). *Galluccio* v. *Commissioner of Labor & Indus.*, 4 Mass. App. Ct. 864 (1976). *Silverlieb* v. *Hebshie*, 33 Mass. App. Ct. 911, 913 (1992). The declaratory relief sought in this case was a determination of the defendant's potential liability under the excess policy. The Superior Court judge should not have entered judgment for the plaintiffs assessing actual liability under the policy where actual damages were not at issue.