APPEALS COURT 
 
 PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE vs. CALLIE HILINKSI & others.[1]

 
 Docket:
 24-P-55
 
 
 Dates:
 December 11, 2024 – March 18, 2025
 
 
 Present:
 Ditkoff, Grant, & Toone, JJ.
 
 
 County:
 Norfolk
 

 
 Keywords:
 Contract, Insurance. Insurance, Motor vehicle insurance, Underinsured motorist, Excess liability insurance, Household exclusion, Construction of policy. Motor Vehicle, Insurance. Practice, Civil, Summary judgment.
 
 

  
      Civil action commenced in the Superior Court Department on March 12, 2021.
      The case was heard by Maynard M. Kirpalani, J., on motions for summary judgment; a motion for reconsideration was considered by him; and the entry of separate and final judgment was ordered by Michael A. Cahillane, J.
      James J. Crowley, Jr., for the defendant.
      John A. Donovan, III (Emily K. Zwerman also present) for the plaintiff.
      TOONE, J.  The defendants/plaintiffs-in-counterclaim, Callie, Lisa, and Scott Hilinski (Hilinskis),[2] appeal from a judgment (1) in favor of the plaintiff, Privilege Underwriters Reciprocal Exchange (Privilege), on its complaint for declaratory relief and (2) against the Hilinskis on their counterclaims for declaratory relief and breach of contract.[3]  The appeal raises two issues regarding the personal excess liability policy (excess policy) held by the Hilinskis.  First, does an exclusion in the excess policy for liability claims by injured family members violate Massachusetts public policy?  Second, does the nonstandard follow-form provision in this excess policy operate to limit underinsured motorist coverage (UIM coverage) under the excess policy by incorporating limitations or exclusions applicable to UIM coverage in the underlying automobile policy (auto policy)?  As discussed further herein, the general purpose of a follow-form provision in an excess insurance policy is to incorporate language from an underlying insurance policy.  On the first issue, we agree with the judge that the excess policy's exclusion for injured family members does not violate Massachusetts public policy and that it is the province of the Legislature and Commissioner of Insurance to determine whether such exclusions should be allowed.  On the second issue, we conclude that the Hilinskis are entitled to UIM coverage under Privilege's excess policy because the particular follow-form provision in that policy does not clearly and unambiguously incorporate UIM coverage limitations or exclusions from the auto policy.
      Background.  In 2018, Lisa and Scott's teenage daughter Callie suffered a severe knee injury while riding as a passenger in a golf cart owned by Scott and driven by Callie's friend, defendant Audrey Connelly.  The Hilinskis alleged that Callie's damages exceed $2,500,000.  At the time of the accident, they held an auto policy and excess policy from Privilege.  The auto policy provided $250,000 in bodily injury coverage and $250,000 in UIM coverage.  The excess policy provided $10,000,000 in excess liability coverage and $1,000,000 in excess UIM coverage.  A claim was submitted on Callie's behalf to Privilege.[4]  Privilege offered $250,000, the bodily injury liability limit under the auto policy, to settle Callie's claims but denied that there is excess liability coverage under the excess policy or UIM coverage under either policy.  Privilege then brought this action seeking a declaration that there is no such coverage for Callie's claims and that Privilege is "entitled to pay the bodily injury limit of $250,000 (per person) under the Auto Policy in exchange for a release."  The Hilinskis filed an answer and counterclaims for declaratory relief, breach of contract, and violations of G. L. c. 93A and G. L. c. 176D.
      After the parties cross-moved for summary judgment, the judge allowed Privilege's motion, denied the Hilinskis' motion on their claims for declaratory relief and breach of contract, and issued the declaration requested by Privilege.[5]  Following the judge's denial of the Hilinskis' motion for reconsideration, separate and final judgment entered under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), and this appeal followed.  
      Discussion.  1.  Standard of review.  "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'"  Juliano v. Simpson, 461 Mass. 527, 529-530 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).
      An insured "bears the initial burden of proving that the claimed loss falls within the coverage of the insurance policy."  Boazova v. Safety Ins. Co., 462 Mass. 346, 351 (2012).  If the insured meets that burden, "the burden then shifts to the insurer to show that a separate exclusion to coverage is applicable."  Id.
      "The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court" (citation omitted).  Ruggerio Ambulance Serv., Inc. v. National Grange Ins. Co., 430 Mass. 794, 797 (2000).  "If the language of an insurance policy is unambiguous, then we construe the words in their usual and ordinary sense."  Zurich Am. Ins. Co. v. Medical Props. Trust, Inc., 494 Mass. 382, 386-387 (2024), quoting Vermont Mut. Ins. Co. v. Poirier, 490 Mass. 161, 164 (2022).  "However, if the policy language is ambiguous, 'doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.'"  Zurich Am. Ins. Co., supra, at 387, quoting Green Mountain Ins. Co. v. Wakelin, 484 Mass. 222, 226 (2020).  "This rule of construction applies with particular force" to exclusions and other provisions that "diminish the protection purchased by the insured."  Zurich Am. Ins. Co., supra, at 387 & n.5.  This is not a case in which the policy language was determined by the Commissioner of Insurance, which would exempt the construction of the policy language from "the usual construction against the drafter."  Oliveira v. Commerce Ins. Co., 94 Mass. App. Ct. 276, 279 (2018), quoting Kanamaru v. Holyoke Mut. Ins. Co., 72 Mass. App. Ct. 396, 399 (2008).
      2.  UIM coverage under the auto policy.  The judge concluded that Callie is not entitled to UIM coverage under the auto policy because the auto policy defines an "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage."  Because the bodily injury coverage ($250,000) is not "less than the limit" of UIM coverage ($250,000), the judge concluded, Callie is not entitled to UIM coverage under the auto policy.  The Hilinskis agree that there is "no UIM coverage under the underlying auto policy because the UIM limits of $250,000 are not greater than the available bodily limits of $250,000."[6]  
      3.  The excess policy.  Instead, the Hilinskis argue that, as an insured, Callie is entitled to liability coverage under the excess policy or, in the alternative, UIM coverage under the excess policy.  Pertinent provisions of the excess policy are reproduced in the appendix to this opinion.
      a.  Liability coverage under the excess policy.  Privilege denied Callie's claim for liability coverage under the excess policy based on the policy's exclusion of coverage for "damages, defense costs or any other costs or expenses . . . [f]or personal injury to you or an insured under the policy."  Under the policy, "insured" means "you or a family member."  Lisa and Scott are the holders of the excess policy, and the Hilinskis agree that, as a family member, Callie is an insured and therefore this exclusion applies to her claim.  Instead, they argue that the exclusion should be invalidated "because it is contrary to Massachusetts public policy of promoting full compensation to auto accident victims."  While the Hilinskis point to a few decisions of other States' courts holding that family member exclusions in excess liability policies violate those States' public policies of "full compensation to innocent victims of automobile accidents," see, e.g., Safeco Ins. Co. of Illinois v. Auto Club Ins., Co., 108 Wash. App. 468, 475-476 (2001), they acknowledge that no Massachusetts court has reached this conclusion and that the majority of States have found that such exclusions do not violate public policy, see Fisher ex rel. McCartney v. State Farm Mut. Auto. Ins. Co., 371 Mont. 147, 162 & n.7 (2013), and cases cited therein.  
      We agree with the judge's conclusion that the excess policy's exclusion for injured family members does not violate Massachusetts public policy.  There is no State law, and therefore no public policy arising from that law, that prohibits the exclusion in umbrella or excess insurance policies.  In the context of homeowners' insurance, we have held that the exclusion of claims against an insured for the injury of a household member does not violate public policy.  See Hahn v. Berkshire Mut. Ins. Co., 28 Mass. App. Ct. 181, 185 (1989) ("We are persuaded in the present circumstances that a court should not proceed to act on a supposed public policy not announced by the Legislature, nor self obviously compelling").  Nor is allowance of an exclusion for injured family members arbitrary, unfair, or unconscionably one-sided.  See Fisher, 371 Mont. at 164 (observing that "exclusion makes it possible to make broad excess coverage available at an economical cost by excluding from coverage 'those in the family circle, who, on account of their close intimacy, may be expected to be riding at frequent intervals in the insured car'" [citation omitted]).  It is ultimately the responsibility of the Legislature and Commissioner of Insurance to determine whether such exclusions should be allowed after considering the full range of interests implicated, including the validity of any "apprehension of insurers about the scope and profusion of intrafamily claims" and "the added exposure, were the exclusion to be scuttled, and with what practical effect on the premiums charged."  See Hahn, supra.[7]
      b.  UIM coverage under the excess policy.  In the alternative, the Hilinskis argue that, even if there is no excess liability coverage to cover Callie's claim, she is entitled to UIM coverage under the excess policy.  The UIM coverage provision of the excess policy states that Privilege will "pay damages for bodily injury an insured is legally entitled to receive from the owner or operator of an uninsured or underinsured auto" provided that those damages are "in excess of the underlying insurance or the minimum required underlying limits, whichever is greater."  The excess policy also provides that its exclusion for injured family members (applicable to claims for excess liability, as discussed supra) "does not apply to coverage provided under Excess Uninsured/Underinsured Motorists Coverage if a limit for this coverage is shown on your Declarations."
      In his decision denying UIM coverage under the excess policy, the judge relied primarily on (1) the excess policy's follow-form provision, combined with (2) the fact that the auto policy defines "underinsured motor vehicle" to mean a vehicle to which a bodily injury liability policy "applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this [UIM] coverage."  Privilege did not assert this ground for denying coverage in its initial summary judgment motion,[8] and it barely mentions it in its brief here.  Instead, Privilege relies, as it did in its initial motion, on (1) the follow-form provision, combined with (2) the fact that the auto policy defines an "underinsured motor vehicle" to exclude any vehicle "[o]wned by or furnished or available for the regular use of you or any 'family member.'"  Although his decision is not clear on this point, it appears that the judge may have relied on this ground also in denying UIM coverage under the excess policy.  In any event, both grounds for denying coverage assume that the follow-form provision in the excess policy makes limitations or exclusions applicable to UIM coverage in the auto policy also applicable to UIM coverage under the excess policy.
      As the Supreme Judicial Court has explained, a follow-form provision can allow "an insured to have coverage for the same set of potential losses (and with the same set of exceptions) in each layer of the insurance program" by making "an excess policy a carbon copy of the primary policy, with the only differences being the names of the parties and the coverage limitations."  Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 630 (2007).  The follow-form provision in Allmerica Fin. Corp. accomplished that goal in a straightforward manner by stating that the excess policy was "subject to the same conditions, limitations and other terms . . . as are contained in or may be added to the Policy(ies) of the Primary Insurer(s)."  Id. at 623.
      By contrast, the follow-form provision in Privilege's excess policy is ambiguous and confusing, at least insofar as it purports to incorporate language from the auto policy's UIM coverage provisions.[9]  The provision first states that Privilege "will cover damages to the extent that they are both covered by the required underlying insurance and not excluded by this policy."  The term "underlying insurance" is elsewhere defined in the excess policy to mean "all liability insurance providing coverage for damages that are covered by this policy" (emphasis omitted).  UIM coverage is not liability coverage.  See Goodman v. American Cas. Co., 419 Mass. 138, 141-142 (1994).[10]  Accordingly, this first sentence is, at the very least, ambiguous as to whether the excess policy's follow-form provision incorporates only provisions in the auto policy applicable to liability coverage, and not provisions applicable to UIM coverage.  This ambiguity is significant because both limitations relied on by the judge and Privilege apply only to UIM coverage in the auto policy.  
      The follow-form provision does not get clearer after that.  The provision's second and third sentences refer to "underlying policy" (an undefined term) instead of "underlying insurance," but, when read in tandem, fail to clarify whether and how UIM coverage is limited under the excess policy.  To the extent the third sentence suggests that the excess policy incorporates coverage limitations in the UIM coverage provisions in the auto policy, the second sentence indicates to the contrary that the excess policy "supersedes and replaces" such provisions.  See Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998) (provision in insurance policy is ambiguous "if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one").[11]
      Dismissing the Hilinskis' concerns about the actual language of the follow-form provision, Privilege argues that it is sufficient for the excess policy to state that it "will follow form."  As the First Circuit has observed, however, "'follow form' is a loose term," and "even where a policy is described as 'follow form,' it does not necessarily provide coverage that is substantively identical to the underlying one."  Insituform Techs., Inc. v. American Home Assur. Co., 566 F.3d 274, 278 & n.3 (1st Cir. 2009).  See Ohio Cas. Ins. Co. v. Patterson-UTI Energy, Inc., 703 S.W. 3d 790, 793 (2024) ("Characterizing an excess policy as a 'follow-form' policy . . . confirms only that the excess policy will to some degree incorporate the provisions of the underlying policy -- the degree of incorporation is determined by the excess policy's text").  Furthermore, in interpreting an insurance policy, we must "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered."  Zurich Am. Ins. Co., 494 Mass. at 387, quoting Dorchester Mut. Ins. Co. v. Miville, 491 Mass. 489, 493 (2023).  Because few purchasers of automobile insurance and liability policies come with a prior understanding of follow-form provisions and how they are supposed to work, it is essential that such a provision explain in a clear and unambiguous manner how the excess policy incorporates coverage limitations or exclusions in the underlying policy.  The follow-form provision in Privilege's excess policy fails to do so with respect to limitations and exclusions in the auto policy's UIM coverage.
      Accordingly, we conclude that the excess policy is ambiguous as to whether it incorporates limitations on what constitutes an "underinsured motor vehicle" in the auto policy's UIM coverage.  Because that ambiguity must be resolved against Privilege, the company that drafted the policy, and in favor of the Hilinskis, Zurich Am. Ins. Co., 494 Mass. at 386-387, and because Privilege has not asserted any other ground for denying UIM coverage under the excess policy, Callie's claim for such coverage should not have been denied.[12]
      4.  Conclusion.  So much of the judgment in favor of Privilege and against the Hilinskis as denied Callie's claim for liability coverage under the excess policy is affirmed.  So much of the judgment in favor of Privilege and against the Hilinskis as denied Callie's claim for UIM coverage under the excess policy is reversed.  A new judgment shall enter declaring that the Hilinskis are entitled to UIM coverage under the excess policy for Callie's injuries.
                                          
 
So ordered.
 
Appendix.
 
 
Excerpts from Privilege's Excess Policy
      The excess policy states, in pertinent part, as follows:
"Section I - Definitions
      ". . .
      "Family Member means a person that lives in your household and is related to you by blood, marriage, registered domestic partnership under state law, or adoption.
      "Follow Form
      "We will cover damages to the extent that they are both covered by the required underlying insurance and not excluded by this policy.  The provisions of this policy supersede and replace similar provisions in the underlying policy.  We will not provide broader coverage than the underlying policy.  When coverage is provided on a follow form basis and no underlying insurance exists, coverage will be determined as if we had sold the required underlying insurance.
      ". . .
      "Insured
      "Insured means you or a family member.  Insured also means any individual or other legal entity given permission by you or a family member to use a vehicle or watercraft covered by this policy with respect to their legal responsibility arising out of its use.
      ". . .
      "Personal Injury
      "Personal Injury means resulting injury or death from one or more of the following:
            "a) Bodily Injury;
      ". . .
      "Underlying Insurance
      "Underlying Insurance means all liability insurance providing coverage for damages that are covered by this policy.  Underlying insurance does not include this policy or insurance specifically purchased to be excess of this policy.
      ". . .
"Section II - Coverages
      "A.  Excess Liability Coverage
      "We will pay for damages that an insured is legally obligated to pay as a result of property damage or personal injury caused by an occurrence to which this coverage applies:
      "a) In excess of the underlying insurance or the minimum required underlying limits, whichever is greater; or 
      "b) From the first dollar where coverage provided by required underlying insurance does not apply or underlying insurance is not required.
". . .
      "B.  Excess Uninsured / Underinsured Motorists Coverage
      ". . .
      "We will pay damages for bodily injury an insured is legally entitled to receive from the owner or operator of an uninsured or underinsured auto.  We will only pay those damages in excess of the underlying insurance or the minimum required underlying limits, whichever is greater.  The most we will pay as a result of an occurrence is the coverage limit for Excess Uninsured / Underinsured Motorists shown on your Declarations.  This limit is the most we will pay, regardless of the number of claims, vehicles or people involved in the occurrence, or vehicles you own.
      "This coverage only applies for an occurrence during the policy period.  This coverage will follow form.
      ". . .
"Section III - Exclusions
      "A.  General Exclusions
      "We will not provide coverage for damages, defense costs or any other costs or expenses:
      ". . .
      "14.  Insured
      "For personal injury to you or an insured under this policy.  This exclusion does not apply to coverage provided under Excess Uninsured/Underinsured Motorists Coverage if a limit for this coverage is shown in your Declarations."

footnotes

         
     [1] Lisa Hilinski, Scott F. Hilinski, and Audrey Connelly.
               [2] For clarity, we refer to the Hilinskis by their first names when referencing any of them individually.
               [3] Audrey Connelly was not a named party in the counterclaim complaint and has not participated in this appeal.
          [4] The Hilinskis received $100,000 pursuant to an insurance policy held by Connelly's family.
      
          [5] The Hilinskis agreed with Privilege to withdraw their claims under G. L. c. 93A and G. L. c. 176D from their cross motion for summary judgment, and those claims remain pending.  
          [6] Because the Hilinskis do not challenge this ruling on appeal, we need not address the judge's alternative ruling that Scott's ownership of the golf cart triggered the auto policy's exclusion of UIM coverage for any vehicle "[o]wned by or furnished or available for the regular use of you or any 'family member.'"  
          [7] To the extent that the Hilinskis contend that they are asserting defendant Connelly's claim for excess liability under the excess policy, rather than Callie's, that argument was not properly raised in the Superior Court and is therefore waived.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006), quoting Century Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989) ("An issue not raised or argued below may not be argued for the first time on appeal").  At summary judgment, the Hilinskis did not assert a claim by Connelly under the excess policy, and the judge did not address the issue in his decision.  In their motion for reconsideration, the Hilinskis made what the judge termed as a "generic[]" request for "the court to reconsider coverage relative to Audrey Connelly."  The judge denied the Hilinskis' request because they "failed to set forth any legal or factual basis" to support it.  Nor are we persuaded by the Hilinskis' contention that the "argument that Callie's claim should be covered by the Excess Policy's liability coverage . . . is simply another way of stating that Audrey has coverage under the Excess Policy."
          [8] Privilege did assert in its opposition to the Hilinskis' motion for summary judgment that an additional reason for summary judgment in its favor was that, in the auto policy, "the limit for Bodily Injury Liability is not less than the limit for Underinsured Motorist Benefits."  Following the judge's summary judgment decision, the Hilinskis argued in a motion for reconsideration that this ground for denying UIM coverage under the excess policy conflicts with our holding in Nichols v. Aetna Cas. & Sur. Co., 38 Mass. App. Ct. 456, 459-461 (1995), but the judge rejected that argument.  
          [9] For ease of reference, the follow-form provision states:
      
"We will cover damages to the extent that they are both covered by the required underlying insurance and not excluded by this policy.  The provisions of this policy supersede and replace similar provisions in the underlying policy.  We will not provide broader coverage than the underlying policy.  When coverage is provided on a follow form basis and no underlying insurance exists, coverage will be determined as if we had sold the required underlying insurance."
          [10] We are not persuaded by Privilege's contention that, even though the follow-form provision initially refers to "underlying insurance" and the excess policy defines that term to mean "liability insurance," we should interpret the follow-form as encompassing all of the "underlying exposures" listed at the start of the policy, including "uninsured / underinsured motorist protection."  At the very least, the language of the provision and the definition of the term referenced therein create an ambiguity that must be resolved in the insured's favor.
               [11] In rejecting the Hilinskis' argument that the follow-form provision is ambiguous, the judge reasoned that the follow-form's statement that similar provisions in the auto policy are superseded and replaced does not apply because the "language and circumstances of the two policies are different as to events triggering underinsured motorist coverage" and, therefore, the terms of the two policies are not "similar provisions" and there is "no ambiguity on this issue."  The excess policy, however, does not explain what a "similar provision" is, and, as discussed, the purpose of a follow-form provision is to clarify whether and how an excess policy incorporates provisions from the underlying policy, regardless of when coverage under each policy is triggered.  Particularly when the follow-form provision is considered as a whole, its statement that provisions in the excess policy "supersede and replace similar provisions in the underlying policy" creates an ambiguity as to how the provision applies to UIM coverage in this case.
          [12] We do not address the Hilinskis' arguments in the alternative that, even if the "owned / regular use" exclusion had been incorporated into the excess policy, it would not apply by its terms and, in any event, violates Massachusetts public policy and G. L. c. 175, § 113L.  Nor do we address Privilege's arguments, made in conclusory fashion and apparently for the first time on appeal, that UIM coverage under the excess policy should be denied because the Hilinskis did not pay a premium for UIM coverage for the golf cart under the auto policy or because UIM coverage was "not contemplated for the golf cart."  See Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 6 n.4 (1996) ("Conclusory statements in a brief do not rise to the level of appellate argument").